UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HINES IMMIGRATION LAW, PLLC et al.,

   Plaintiffs,

    v.

Executive Office for Immigration Review et al.,

   Defendants.

Civil Action No. 26-1018 (CJN)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION SEEKING
<u>RELIEF PURSUANT TO 5 U.S.C. § 705</u>**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................ i

Table of Authorities ........................................................................................................... ii

Background ......................................................................................................................... 1

    I.    Statutory Framework for Immigration Proceedings. ............................................. 1

    II.    Procedural History. ................................................................................................ 6

Legal Standard ................................................................................................................... 7

Argument ............................................................................................................................ 9

    I.    Plaintiffs are Not Likely to Succeed on the Merits of Their Claims. ..................... 9

        A.    Plaintiffs Lack Standing to Pursue This Case. ............................................. 9

        B.    This Court Lacks Jurisdiction under the INA and REAL ID Act. ............. 13

        C.    Plaintiffs Are Unlikely to Prevail Under the APA Because They Fail to Identify Agency Action and Certainly No Final Agency Action. ............ 20

    II.    Plaintiffs Will Not Suffer Irreparable Harm Absent Emergency Relief. .............. 22

    III.    The Requested Relief is Contrary to Public Interests. ......................................... 26

    IV.    Any Emergency Relied Should Be Stayed Pending Appeal and a Bond Should Be Required. ............................................................................................................. 27

Conclusion ....................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018) ................................................................................................ 18

*Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*,
510 F.3d 1 (1st Cir. 2007) ...................................................................................... 14

*Ahmed v. Holder*,
569 F.3d 1009 (9th Cir. 2009) .................................................................................. 5

*Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d,
327 F.2d 327 (D.D.C. 2012) .................................................................................... 23

*Alvarez v. U.S. Immigr. & Customs Enf't*,
818 F.3d 1194 (11th Cir. 2016) .............................................................................. 16

*Am. Soc. for Prevention of Cruelty to Animals v. Feld Ent., Inc.*,
659 F.3d 13 (D.C. Cir. 2011) .................................................................................. 10

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) .................................................................................................. 9

*Army Corps of Eng'rs v. Hawkes Co.*,
578 U.S. 590 (2016) ................................................................................................ 22

*Arriva Med LLC v. Dep't of Health & Human Servs.*,
239 F. Supp. 3d 266 (D.D.C. 2017) .................................................................. 23, 24

*Aviles-Wynkoop v. Neal*,
978 F. Supp. 2d 15 (D.D.C. 2013) .......................................................................... 23

*Benisek v. Lamone*,
585 U.S. 155 (2018) .................................................................................................. 8

*Bennett v. Spear*,
520 U.S. 154 (1997) ................................................................................................ 22

*Biden v. Texas*,
597 U.S. 785 (2022) ................................................................................................ 18

*Brown v. Gilmore*,
533 U.S. 1301 (2001) .............................................................................................. 20

*Cabrera v. Dep't of Lab.*,
792 F. Supp. 3d 91 (D.D.C. 2025) ............................................................................ 9

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ........................................................................ passim

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .............................................................................................. 9, 20

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
58 F.3d 738 (D.C. Cir. 1995) .................................................................................... 8

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .................................................................................................. 9

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) .......................................................................................... 21, 23

*Cornish v. Dudas*,
    540 F. Supp. 2d 61 (D.D.C. 2008) ............................................................................... 23

*Cronin v. USDA*,
    919 F.2d 439 (7th Cir. 1990) ...................................................................................... 17

*Cuomo v. NRC*,
    772 F.2d 972 (D.C. Cir. 1985) ...................................................................................... 7

*Damus v. Nielsen*, Civ. A.,
    No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) .................................. 7

*Davis v. Pension Ben. Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) .................................................................................... 7

*E.F.L. v. Prim*,
    986 F.3d 959 (7th Cir. 2021) ...................................................................................... 15

*E.O.H.C. v. Sec'y of Homeland Sec.*,
    950 F.3d 177 (3d Cir. 2020)....................................................................................... 14

*Emily's List v. FEC*,
    362 F. Supp. 2d 43 (D.D.C. 2005) ............................................................................. 24

*Equal Rts. Ctr. v. Post Props., Inc.*,
    633 F.3d 1136, 1138 (D.C. Cir. 2011)....................................................................... 10

*Farris v. Rice*,
    453 F. Supp. 2d 76 (D.D.C. 2006) ............................................................................... 8

*Fla. Audubon Soc'y v. Bentsen*,
    94 F.3d 658 (D.C. Cir. 1996) ..................................................................................... 10

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)................................................................................................... 11

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ................................................................................... 10

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022)....................................................................................... 13, 17, 20

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)................................................................................................... 10

*Humphries v. Various Fed. USINS Emps.*,
    164 F.3d 936 (5th Cir. 1999) ..................................................................................... 16

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977)................................................................................................... 12

*Indus. Consumers of Am. v. Fed. Energy Regul. Comm'n*, 125 F.4th 1156. (D.C. Cir. 2025)..... 12

*Illinois v. Gates*,
    462 U.S. 213 (1983)..................................................................................................... 5

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) .............................................................................. 14, 25

*Jennings v. Rodriguez*,
    583 U.S. 281(2018)................................................................................................... 14

*Jimenez-Angeles v. Ashcroft*,
    291 F.3d 594 (9th Cir. 2002) ..................................................................................... 15

*Jobbers Ass'n v. FPC*,
    259 F.2d 921 (D.C. Cir.1958)................................................................................... 24

*John Doe Co. v. CFPB*,
    849 F.3d 1129 (D.C. Cir. 2017) ........................................................................ 23

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ................................................................................... 11, 12

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ................................................................................ 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................... 10

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) .......................................................................................... 22

*Maryland v. King*,
    567 U.S. 1301 (2012) ........................................................................................ 26

*Matter of Hashmi*,
    24 I&N Dec. 785 (BIA 2009) ............................................................................ 21

*Matter of Interiano-Rosa*,
    25 I&N Dec. 264 (BIA 2010) .............................................................................. 4

*Matter of L-A-B-R-*,
    27 I&N Dec. 405 (A.G. 2018) ...................................................................... 5, 21

*Matter of Perez-Andrade*,
    19 I&N Dec. 433 (BIA 1987) .............................................................................. 4

*Matter of Sibrun*,
    18 I&N Dec. 354 (BIA 1983) .............................................................................. 4

*Monumental Task Comm., Inc. v. Foxx*,
    157 F. Supp. 3d 573 (E.D. La. 2016) ............................................................... 17

*N.S. v. Dixon*,
    141 F.4th 279 (D.C. Cir. 2025) ........................................................................ 13

*Nielsen v. Preap*,
    586 U.S. 392 (2019) .......................................................................................... 13

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................... 24, 26

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ............................................................................................ 22

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................ 9

*Pantoja v. Martinez*,
    No. 21-7118, 2022 WL 893017 (D.C. Cir. 2022) ............................................. 8

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000) ............................................................................... 5

*Privacy Info. Ctr. v. Dep't of Just.*,
    15 F. Supp. 3d 32 (D.D.C. 2014) ..................................................................... 25

*Project of Nat'l Laws. Guild v. Exec. Off. of Immigr. Rev.*, 456 F. Supp. 3d 16 (D.D.C. 2020).. 14

*Pub. Citizen, Inc. v. Trump*,
    297 F. Supp. 3d 6 (D.D.C. 2018) ..................................................................... 12

*Rauda v. Jennings*,
    55 F.4th 773 (9th Cir. 2022) ............................................................................. 15

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999)..........................................................................................5, 15, 26
*Saadulloev v. Garland*,
  No. 3:23-CV-00106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024) ....................................... 16
*Sadhvani v. Chertoff*,
  460 F. Supp. 2d 114 (D.D.C. 2006) ...................................................................... 17
*Sampson v. Murray*,
  415 U.S. 61 (1974)................................................................................... 7, 18
*Schlagenhauf v. Holder*,
  379 U.S. 104 (1964)...................................................................................... 5
*Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.,* 678 F. Supp. 3d 88 (D.D.C.
  2023) ............................................................................................................ 7
*Scripps-Howard Radio*,
  316 U.S. .......................................................................................................... 18
*Sierra Club v. EPA*,
  754 F.3d 995 (D.C. Cir. 2014) .............................................................................. 10
*Sierra Club v. Jackson*,
  833 F. Supp. 2d 11 (D.D.C. 2012) ....................................................................... 18
*Sissoko v. Rocha*,
  509 F.3d 947 (9th Cir. 2007) ................................................................................ 15
*Starbucks Corp. v. McKinney*,
  602 U.S. 339 (2024)............................................................................................ 7
*Tazu v. Att'y Gen.*,
  975 F.3d 292 (3d Cir. 2020)................................................................................ 15
*Tercero v. Holder*,
  510 F. App'x 761 (10th Cir. 2013) ....................................................................... 16
*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016) ............................................................................... 17
*Turlock Irrigation Dist. v. FERC*,
  786 F.3d 18 (D.C. Cir. 2015)............................................................................... 10
*United States Ass'n of Reptile Keepers, Inc. v. Zinke*,
  852 F.3d 1131 (D.C. Cir. 2017)............................................................................. 8
*United States v. Martinez-Fuerte*,
  428 U.S. 543 (1976).......................................................................................... 26
*Verde-Rodriguez v. Att'y Gen.*,
  734 F.3d 198 (3d Cir. 2013)................................................................................ 25
*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978)........................................................................................... 19
*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841 (D.C. Cir. 1977)............................................................................. 24
*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)................................................................................... 7, 24, 26
*Wis. Gas Co. v. Fed. Regul. Comm'n*,
  758 F.2d 669 (D.C. Cir. 1985).......................................................................... 23, 24

*Wyoming v. Dep't of Interior*,
    2018 WL 2727031 (10th Cir. June 4, 2018) .............................................................. 20

**Statutes**

5 U.S.C. § 551(13) ......................................................................................................... 21
5 U.S.C. § 705 ......................................................................................................... passim
8 U.S.C. § 1229a(b)(1) (2006) ........................................................................................ 4
8 U.S.C. § 1252(a)(5) ......................................................................................... 14, 22, 24
8 U.S.C. § 1252(b)(2) .................................................................................................... 16
8 U.S.C. § 1252(b)(9) .................................................................................................... 13
8 U.S.C. § 1252(f)(1) ............................................................................................... 13, 17
8 U.S.C. § 1252(g) ................................................................................................... 14, 15

**Rules**

Fed. R. Civ. P. 65(c) ..................................................................................................... 27

**Regulations**

8 C.F.R. § 1003.10(b) ............................................................................................. 2, 3, 4
8 C.F.R. § 1003.102 ...................................................................................................... 21
8 C.F.R. § 1003.102(j)(1) ................................................................................................ 5
8 C.F.R. § 1003.102(q)(1) ............................................................................................. 21
8 C.F.R. § 1240.6 ............................................................................................................ 4
8 C.F.R. §§ 1003.0(b)(1)(i) ............................................................................................. 1
8 C.F.R. §§ 1003.0(c) ..................................................................................................... 1
8 C.F.R. §§ 1003.29 .................................................................................................... 4, 6
8 C.F.R. §§ 1003.36 ........................................................................................................ 4

**Other Authorities**

Exec. Order No. 14159 .................................................................................................... 2
Exec. Order No. 14165 .................................................................................................... 2

The Executive Office for Immigration Review ("EOIR"), Department of Justice, Daren K. Margolin, in his official capacity as Director of the Executive Office for Immigration Review, and Attorney General Pamela J. Bondi, (collectively "Defendants"), respectfully file this opposition to Plaintiffs' Emergency Motion for a Stay Under 5 U.S.C. § 705 (ECF No. 3, "Pls. Mot.") filed by Hines Immigration Law, PLLC, and The Advocates for Human Rights, ("Plaintiffs"). For the reasons outlined below, Plaintiffs' Motion should be denied.

## BACKGROUND

### I.    Statutory Framework for Immigration Proceedings.

Under 8 C.F.R. §§ 1003.0(b)(1)(i), 1003.9(b)(1), for immigration courts, the regulations authorize only the Executive Office for Immigration Review Director and the Chief Immigration Judge to "[i]ssue operational instructions and policy." In addition, the Director has authority to "[d]irect the conduct of all EOIR employees to ensure the efficient disposition of all pending cases, including the power, in [his] discretion, to set priorities or time frames for the resolution of cases" and "otherwise to manage the docket of matters to be decided by" immigration judges. 8 C.F.R. § 1003.0(b)(1)(ii).

Even so, no individual in EOIR leadership may direct an Immigration Judge to decide a case in any particular way. *See* 8 C.F.R. §§ 1003.0(c) (stating that the Director does not have the authority "to direct the result of an adjudication assigned to . . . an immigration judge"), 1003.9(c) ("The Chief Immigration Judge shall have no authority to direct the result of an adjudication assigned to another immigration judge . . . ."); *accord* PM 25-42, *Adjudicator Independence and Impartiality* (Aug, 22, 2025) (concluding that "[t]herefore, no EOIR employee or officer can direct any adjudicator to rule in a particular way on a matter before him or her in the first instance").

While Plaintiffs cite to the Immigration Court Practice Manual (the "Manual"), which is a subsection of the EOIR Policy Manual, the Manual is not binding if "the Immigration Judge directs

otherwise in a particular case." Manual Ch. 1.1(b). Moreover, the Manual cannot and does not limit an immigration judge's discretion in handling a particular case. *See* Manual Ch. 1.1(c) ("Nothing in this manual shall limit the discretion of immigration judges to act in accordance with law and regulation."); *see also* 8 C.F.R. § 1003.10(b) (authorizing immigration judges to take any action consistent with the law "necessary or appropriate for the disposition" of a case). Under PM 25-47, *Case Priorities and Immigration Court Performance Measures* (Sept. 12, 2025), "EOIR is adjudicating cases fairly, expeditiously, and uniformly consistent with its mission; and, EOIR is taking appropriate strides to address its pending caseload in support of the national interest." *See* Exec. Order No. 14159, 90 Fed. Reg. at 8443; Exec. Order No. 14165, 90 Fed. Reg. at 8467. Although the Director has authority to "set priorities or time frames for the resolution of cases," "the designation of a case as a priority is not intended to limit the discretion afforded an immigration judge under applicable law, nor is it intended to mandate or direct a specific outcome in any particular case." 8 C.F.R. § 1003.0(b)(1)(ii); PM 25-47.

Appendix A of PM 25-47 provides immigration court performance metrics, which includes case completion expectation timeframes to ensure the efficient and timely resolution of cases consistent with due process. Therein:

1. Ninety-five percent (95%) of all non-status[1] detained[2] removal cases should be completed[3] within 60 days of filing of the Notice to Appear, reopening or recalendaring of the case, remand from the Board of Immigration Appeals (BIA), or notification of detention.

---

[1]    A status case is (1) one in which an immigration judge is required to continue the case pursuant to binding authority in order to await the adjudication of an application or petition by U.S. Citizenship and Immigration Services; (2) one in which the immigration judge is required to reserve a decision rather than completing the case pursuant to law or policy; or (3) one which is subject to a deadline established by a federal court order.

[2]    A "removal" case includes a case in removal proceedings, in addition to any reopened, recalendared, or remanded cases in exclusion or deportation proceedings.

[3]    A completed removal case is one in which a final decision has been rendered concluding the case at the immigration court level and encompasses an order of removal, an order of voluntary

2.  Ninety-five percent (95%) of all non-status non-detained removal cases should be completed within 365 days (1 year) of filing of the Notice to Appear, reopening or recalendaring of the case, remand from the BIA, or notification of release from custody.

. . .

7.  One hundred percent (100%) of all expedited asylum cases should be completed within the statutory deadline. *See* INA 208(d)(5)(A)(iii); 8 U.S.C. § 1158(d)(5)(A)(iii).

By PM 25-47 and consistent with the Director's authority under 8 C.F.R. § 1003.0(b)(1)(ii), EOIR may establish general immigration court performance measures, which include timelines for case completions for both detained and non-detained cases, triggered upon filing of the Notice to Appear by the Department of Homeland Security. *See supra*. These metrics for case completions ensure their timely resolution, that aliens can receive a decision in a timely manner consistent with due process, and prevent languishing of cases and development of a backlog of aged cases. Plaintiffs' purported assertions of a Somali Fast-Track Policy are baseless and contrary to PM 25-47. They are also consistent with the with the statute which requires that "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(iii).

Under 8 C.F.R. § 1003.10(b), "immigration judges shall exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations that is necessary or appropriate for the disposition or alternative resolution of such cases." As such, immigration judges are in the best position to determine on a case-by-case basis what an appropriate deadline is, what actions are appropriate as not all cases will be similarly

---

departure, an order terminating proceedings, or an order granting protection or relief from removal. For other types of cases, a completed case is one in which a final decision has been rendered appropriate for the specific type of case proceeding. A case that is administratively closed is still a pending case and, thus, not a completed case.

situated, and there is no one-size-fits-all approach to continuances. Furthermore, "[i]n all cases, immigration judges shall seek to resolve the questions before them in a timely and impartial manner consistent with the Act and regulations." *Id.* The decision to grant or deny a continuance, either at a master calendar or merits hearing, has long been one for the immigration judge to make in the exercise of discretion based on whether good cause is shown in the individual circumstances of the case. *See Matter of Perez-Andrade*, 19 I&N Dec. 433 (BIA 1987); *Matter of Sibrun*, 18 I&N Dec. 354, 355-57 (BIA 1983); *see also* 8 C.F.R. §§ 1003.29, 1240.6. This decision is a matter that is within the immigration judge's statutory and regulatory authority to manage immigration hearings. *See Matter of Interiano-Rosa*, 25 I&N Dec. 264, 265 (BIA 2010) ("Immigration Judges have broad discretion to conduct and control immigration proceedings and to admit and consider relevant and probative evidence. *See* section 240(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229a(b)(1) (2006); 8 C.F.R. §§ 1003.36, 1240.1(c), 1240.7(a)").

The general standard for a continuance is good cause. 8 C.F.R. § 1003.29; 8 C.F.R. § 1240.6 (providing that the immigration judge may grant a reasonable adjournment either at their own instance or, for good cause shown, upon application by the respondent/alien, or the DHS). The length of any continuance should be "reasonable," 8 C.F.R. § 1240.6, and the party seeking the continuance bears the burden of establishing that good cause exists. Immigration judges consider a non-exhaustive list of factors when deciding whether good cause exists: the reason for the continuance, any opposition to the continuance, timing of the request, whether the respondent is detained, complexity of the case, number and length of any prior continuances, and concerns for administrative efficiency and case delays. As with any balancing analysis requiring consideration of multiple factors, the respondent's strength on certain factors may compensate for a weaker

showing on others. *Cf. Illinois v. Gates*, 462 U.S. 213, 233 (1983) ("a deficiency in one" factor relevant to probable cause "may be compensated for . . . by a strong showing" on another).

Continuance requests made solely for dilatory purposes should not be granted. *See* 8 C.F.R. § 1003.102(j)(1) ("A practitioner engages in frivolous behavior when he or she knows or reasonably should have known that his or her actions. . .are taken for an improper purpose, such as . . . to cause unnecessary delay."); *Matter of L-A-B-R-*, 27 I&N Dec. 405, 407 (A.G. 2018) ("the use of continuances as a dilatory tactic is particularly pernicious in the immigration context").; *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 & n.9 (1999) ("AADC") ("Section 1252(g) seems clearly designed to give some measure of protection to ... discretionary determinations."). The good-cause standard is not toothless, but a substantive requirement that limits the discretion of immigration judges and prohibits them from granting continuances for any reason or no reason at all. *Matter of L-A-B-R-*, 27 I&N Dec. at 416. Rather than giving "unfettered discretion to grant or deny a continuance," section 1003.29 "require[s] an [immigration judge] to make some inquiry into whether good cause exists in a given individual case." *Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009). "Good cause," in other words, does not mean "no cause" or "any cause." *See*, *e.g.*, *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964) (procedural rule's "good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of [the rule]"); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (Sotomayor, J.) (contrasting a good-cause standard with a "more liberal" rule directing courts to grant relief "freely . . . when justice so requires").

Under PM 21-13, *Continuances* (Jan. 8, 2021), EOIR has no policy mandating or requiring immigration judges to grant a continuance for any reason in any particular case or circumstance, except where a continuance is required by binding law. *See* PM 20-07, Case Management and

Docketing Practices at 5 (Jan. 31, 2020). EOIR management does not possess authority to direct the result of an adjudication by an immigration judge by directing the Judge to grant or deny a continuance request in specific cases. By statute, however, "[i]n the absence of exceptional circumstances, final administrative adjudication of [an] asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." INA § 208(d)(5)(A)(iii). "Exceptional circumstances" is a higher standard than "good cause." PM 19-05, *Guidance Regarding the Adjudication of Asylum Applications Consistent with INA § 208(d)(5)(A)(iii)* (Nov. 19, 2018) at 2-3 ("A continuance does not automatically justify exceeding the 180-day timeline in INA § 208(d)(5)(A)(iii), however, because the statute's 'exceptional circumstances' standard is higher than the 'good cause' standard for continuances."). Thus, "if granting a continuance would result in missing the 180-day deadline, the immigration judge may only grant the continuance if the respondent satisfies both the good-cause standard of 8 C.F.R. § 1003.29 and also shows the 'exceptional circumstances' required by INA § 208(d)(5)(A)(iii)." *Id.* at 2.

## II.     Procedural History.

Plaintiffs initiated this civil action on March 24, 2026. *See* Compl. (ECF No. 1). Plaintiff, Hines Immigration Law, PLLC is a private law firm located in Roseville Minnesota. Compl. at ¶ 12. The Advocates for Human Rights is a nonprofit organization. *Id*. ¶ 13. Plaintiffs purport to raise claims pursuant to the APA and the First and Fifth Amendment to the Constitution of the United States by alleging that the Defendants adopted a policy to expedite the removal of non-detained citizens of Somalia. *See generally* Compl. The same day, Plaintiffs filed a motion seeking to "stay the Somali Fast-Track Policy." Pls. Mot. (ECF No. 3-1) at 39. The Court adopted the parties proposed briefing schedule for Plaintiffs emergency motion and scheduled oral argument on April 7, 2026. See March 26, 2026, Min. Order.

**LEGAL STANDARD**

The standards of review for relief under 5 U.S.C. § 705 are the same as for preliminary injunctions. *See Sampson v. Murray*, 415 U.S. 61, 80 (1974); *Cuomo v. NRC*, 772 F.2d 972, 974 (D.C. Cir. 1985). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The moving party bears the burden of persuasion and must demonstrate "by a clear showing" that the requested relief is warranted. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). A "court must be persuaded as to all four factors." *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.,* 678 F. Supp. 3d 88, 100 (D.D.C. 2023).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)). The Supreme Court subsequently reaffirmed its disagreement with the sliding scale approach, holding that "a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). And where a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or

- 7 -

that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006); *Pantoja v. Martinez*, No. 21-7118, 2022 WL 893017, at *1 (D.C. Cir. 2022) (per curiam) (characterizing injunction that would reinstate the plaintiff in his prior leadership roles as a "mandatory preliminary injunction . . . requir[ing] a higher standard than an ordinary preliminary injunction"); *but see League of Women Voters v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (rejecting distinction between a mandatory and prohibitory injunction).

Regardless, if the Court concludes that a claim fails as a matter of law—on a point of jurisdiction or merits—then interim relief is inappropriate. *See United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1135 (D.C. Cir. 2017). Because preliminary injunctions are not "awarded as of right," but "[a]s a matter of equitable discretion, a preliminary injunction does not [even] follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018). Even if the movant can show a strong likelihood of success on the merits but fails to make a sufficient showing of irreparable injury, the Court must deny the request for preliminary injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). And where, as here, a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006).

**ARGUMENT**

**I.      Plaintiffs are Not Likely to Succeed on the Merits of Their Claims.[4]**

Plaintiffs' Motion runs into multiple jurisdictional bars. "To succeed on the merits, a plaintiff must show a likelihood of success encompassing not only substantive theories but also establishment of jurisdiction[.]" *Cabrera v. Dep't of Lab.*, 792 F. Supp. 3d 91, 99-100 (D.D.C. 2025) (cleaned up). If the Court "concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Plaintiffs lack standing as a threshold matter, and their failure to satisfy Article III requirements is all that is required to deny their motion and dismiss this action. But bars under INA and the REAL ID Act also foreclose Plaintiffs' likelihood of success on the merits of their claims.

**A.      Plaintiffs Lack Standing to Pursue This Case.**

Plaintiffs are unlikely to succeed on the merits of their complaint because neither Plaintiff has standing. Plaintiffs lack standing to bring their APA claims and their constitutional claims because they do not "satisfy the threshold requirement" of "alleg[ing] an actual case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974). Where, as here, the relief sought is prospective relief only, a plaintiff must demonstrate a risk of future injury that is both "real" and "immediate" and neither "conjectural" nor "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983). A plaintiff seeking forward-looking relief bears the burden of proving the existence of a future "threatened injury [that is] certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). Plaintiffs' requests for relief fall short because they rest on speculation related to an alleged expedited hearing policy and identified and yet to be adjudicated

---

[4]      Plaintiffs assert First and Fifth Amendment violations in their complaint but do not seek redress for those claims in their emergency motion. *See* Pls.' Mot. (ECF No. 3-1) at 24 n.4. In any event, Defendants maintain those claims would be subject to dismissal.

immigration proceedings. Plaintiffs' speculative allegations of harm do not raise any concrete injury sufficient to establish standing or obtain emergency relief. Moreover, Plaintiffs cannot rely on the independent actions of immigration judges to establish standing because Article III injury cannot be based on the 'independent actions of some third party not before this court.'" *See Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 25 (D.C. Cir. 2015) (formatting modified) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996) (en banc)).

To the extent that Plaintiffs contend that they have organizational or associational standing, Plaintiffs are unlikely to succeed on those claims.

### 1.    Organizational Standing

Alleging organizational standing is both similar to and distinct from establishing individual standing. "[L]ike an individual plaintiff," an organization must "show actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). Plaintiffs must point to "concrete and demonstrable injury to [their] activities" and "[a] mere setback to its abstract social interests is not sufficient." *Equal Rts. Ctr. v. Post Props., Inc*., 633 F.3d 1136, 1138 (D.C. Cir. 2011) (cleaned up); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Self-inflicted budgetary choice will not suffice. *See Am. Soc. for Prevention of Cruelty to Animals v. Feld Ent., Inc*., 659 F.3d 13, 25 (D.C. Cir. 2011). Moreover, when a Plaintiffs "are not the "objects of the [challenged conduct], standing 'is ordinarily "substantially more difficult" to establish.'" *Sierra Club v. EPA*, 754 F.3d 995, 999 (D.C. Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)).

Here Plaintiffs fall short. First, Plaintiffs fail to link their alleged injuries to any illegal action, let alone one that is likely to be redressed by a favorable decision. Plaintiffs have not identified any final agency action but instead seek redress for how immigration judges choose to

manage their dockets. And Plaintiffs cannot point to any section of the INA or the regulations outlining an immigrations judge's discretion over removal proceedings to establish that Plaintiffs are the objects of the alleged conduct. The INA regulates non-citizens and removal proceedings and not attorney representatives. Organizations cannot demonstrate standing based on an alleged injury to an unidentified client. *See Kowalski v. Tesmer*, 543 U.S. 125, 134 n.5 (2004).

The Advocates for Human Rights claims to be an independent organization that "promotes and protects internationally recognized human rights standards by promoting civil society and reinforcing the rule of law." Compl. ¶ 13. It claims to have diverted staff from its core programs. *See id*. ¶ 69. It further claims one supervisor has shifted from management responsibilities to develop an emergency response to its pending removal proceedings. *See id*. The Advocates for Human Rights provide multiple declarations explaining their efforts to manage current removal proceedings and inquiries from prospective clients. But these claims are not enough to establish organizational standing. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (rejecting the theory that anytime a group diverts resources in response to a government policy entitles them to standing; "that theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies"). That broad grant of standing is wholly inconsistent with the narrow pathway to standing available to organizations that are not being directly regulated by the policies they seek to challenge. *See id*. at 383 (a non-regulated organization must "thread [a] causation needle" to establish standing).

To the extent that plaintiff Hines Immigration Law, PLLC attempts to establish organizational standing, this claim also fails. This Plaintiff claims to have only one attorney. *See* Hines Decl. (ECF No. 3-2) ¶ 9. This attorney claims to be responsible for 113 asylum cases. *See*

- 11 -

*id.* ¶ 34. Of the 113 cases, 73 cases are connected to citizens of Somalia. *Id*. ¶ 36. Plaintiff Hines alleges as a sole practitioner, she must divert resources to her Somali cases and is unable to provide adequate legal representation to current or prospective clients. *See generally*, Hines Decl. But diverting resources is not enough to establish organizational standing. Moreover, a "future attorney-client relationship with a as yet unascertained client" is not a permissible basis for standing. *See Kowalski*, 543 U.S. 125, 134 (2004). Most significant, Hines Immigration Law, PLLC is not directly regulated by removal proceedings.

### 2.    Associational Standing.

Plaintiffs likewise lack associational standing. To plead representative or associational standing, a plaintiff must plausibly allege that (1) the plaintiff has at least one member who "would otherwise have standing to sue in [her] own right," (2) "the interests" the association "seeks to protect are germane to [its] purpose," and (3) "neither the claim asserted nor the relief requested required the participation of [the] individual members in the lawsuit." *Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 17 (D.D.C. 2018) (Moss, J.) (*quoting Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). While associational standing presently remains a valid method to establish a justiciable case or controversy, judges have recently questioned whether the doctrine is consistent with Article III. *See, e.g., Indus. Energy Consumers of Am. v. Fed. Energy Regul. Comm'n*, 125 F.4th 1156, 1167. (D.C. Cir. 2025) (Henderson, J., concurring) ("there is good reason to believe that associational standing does not meet at least two Article III requisites").

Here the Plaintiffs fail to identify any member that would have standing to bring this suit in his or her own right. *See generally*, Compl. Plaintiffs are attorneys or advocates who provide legal services or resources and not aliens subject to removal proceedings. Accordingly, any attempt to maintain this suit under an associational standing theory fails.

**B.    This Court Lacks Jurisdiction under the INA and REAL ID Act.**

Plaintiffs claim there is a policy to expedite the removal of non-detained noncitizens of Somalia. However, there is no such policy. At bottom, Plaintiffs' claims are nothing more than a collateral attack on immigration proceedings. And this Court lacks the authority to hear those claims.

By way of the INA and then the REAL ID Act, Congress divested federal district courts from hearing claims related to removal. 8 U.S.C. § 1252(b)(9). So too any claim related to the decision to commence removal proceedings and adjudicate cases. *Id*. § 1252(g). Moreover, Section 1252(f) strips the federal courts of the "jurisdiction or authority" to "enjoin or restrain the operation of" certain INA provisions—including those governing expedited removal—"other than with respect to the application of such provisions to an individual alien against whom proceedings ... have been initiated."  8 U.S.C. § 1252(f)(1); *see Nielsen v. Preap*, 586 U.S. 392, 402 (2019).  By its terms, this provision bars the federal courts from issuing any order that commands "federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specific statutory provisions," except in "individual cases."  *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022); *see N.S. v. Dixon*, 141 F.4th 279, 288-90 (D.C. Cir. 2025). Despite jurisdictional prohibitions, Plaintiffs seek a stay from this Court essentially controlling how immigration judges manage their dockets. Plaintiffs' motion should be denied.

1.    Section 1252(b)(9) bars relief and review.

Under 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provision, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final [removal] order." And a petition for review filed in the appropriate court of appeals is the sole and exclusive means for judicial review of a final

removal order. *See* 8 U.S.C. § 1252(a)(5). In other words, if a claim challenges a "decision to . . . seek removal," a district court lacks jurisdiction to consider that claim and the claim instead must be reviewed through the administrative process. *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Collateral attacks on removal proceedings are part of the decision to remove a noncitizen and § 1252(b)(9) plainly precludes "all district court review of any issue raised in a removal proceeding." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029, 1034 (9th Cir. 2016) ("We conclude that §§ 1252(a)(5) and 1252(b)(9) channel review of all claims, including policies-and-practices challenges, through the [petition for review] process whenever they 'arise from' removal proceedings."); *E.O.H.C. v. Sec'y of Homeland Sec.*, 950 F.3d 177, 188 (3d Cir. 2020) (upholding dismissal of alien's deprivation of counsel claim because "the court of appeals can redress any deprivation of counsel in the removal proceedings before the alien is removed."); *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1 (1st Cir. 2007) ("Challenges to removal orders premised on the government's putative violation of an alien's right to counsel are commonplace, and such claims are often featured in petitions for judicial review of removal orders."); *Nat'l Immigr. Project of Nat'l Laws. Guild v. Exec. Off. of Immigr. Rev.*, 456 F. Supp. 3d 16 (D.D.C. 2020) (deciding §1252(b)(9) barred plaintiffs' "access-to-counsel and due process claims" because they arose "from the course of removal hearings.")

2.      Plaintiffs' Motion Contravenes Section 1252(g).

Section 1252(g), as amended by the REAL ID Act, specifically deprives courts of jurisdiction to review "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] *adjudicate cases*, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory)." *Id.* Yet, Plaintiffs seek an order from this Court

staying "the scheduling or rescheduling of non-detained Somali noncitizens' immigration hearings." *See* Proposed Order (ECF No. 3-20). Although Section 1252(g) "does not sweep broadly," *Tazu v. Att'y Gen.*, 975 F.3d 292, 296 (3d Cir. 2020), its "narrow sweep is firm," *E.F.L. v. Prim*, 986 F.3d 959, 964–65 (7th Cir. 2021). Except as provided by § 1252, courts "cannot entertain challenges to the enumerated executive branch decisions or actions." *Id.*

The Supreme Court has explained that 8 U.S.C. § 1252(g) "seems clearly designed to give some measure of protection to ... discretionary determinations." *AADC.*, 525 U.S. 471, 485 & n.9 (1999). This limitation exists for "good reason: so "[a]t each stage the Executive has discretion to abandon the endeavor." *AADC*, 525 U.S. at 483–84. In addition, through § 1252(g) and other provisions of the INA, Congress "aimed to prevent removal proceedings from becoming 'fragment[ed], and hence prolong[ed].'" *Tazu*, 975 F.3d at 296 (alterations in original) (quoting *AADC*, 525 U.S. at 487); *see Rauda v. Jennings*, 55 F.4th 773, 777–78 (9th Cir. 2022) ("Limiting federal jurisdiction in this way is understandable because Congress wanted to streamline immigration proceedings by limiting judicial review to final orders, litigated in the context of petitions for review."). Accordingly, § 1252(g) prohibits district courts from hearing challenges to decisions and actions about whether and when to commence removal proceedings. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g) . . . to include not only a decision in an individual case whether to commence, but also when to commence, a proceeding.").

Under the plain text of § 1252(g), the provision must apply equally to decisions and actions to commence proceedings and adjudicate cases that ultimately may end in the execution of a final removal order. *See Jimenez-Angeles v. Ashcroft,* 291 F.3d 594, 599 (9th Cir. 2002); *see also Sissoko v. Rocha*, 509 F.3d 947, 950–51 (9th Cir. 2007) (holding that § 1252(g) barred review of

- 15 -

a Fourth Amendment false-arrest claim that "directly challenge[d] [the] decision to commence expedited removal proceedings"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (determining that § 1252(g) prohibited review of an alien's First Amendment retaliation claim based on the Attorney General's decision to put him into exclusion proceedings).

The scope of § 1252(g) also bars district courts from hearing challenges to the method by which the Secretary of Homeland Security chooses to commence removal proceedings. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal—and thus necessarily prevents us from considering whether the agency should have used a different statutory procedure to initiate the removal process."); *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to arrest Saadulloev on April 4, 2023, clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g)."). Under the same reasoning, § 1252(g) bars review of where to commence proceedings. And choosing to commence proceedings "outside the Somali noncitizen's venue" is a decision or action not subject to review. Pls.' Mot. (ECF No. 3-1) at 11; *see also Tercero v. Holder*, 510 F. App'x 761, 766 (10th Cir. 2013) ("Accordingly, the Attorney General's discretionary decision to detain Mr. Tercero and others in New Mexico is not reviewable by way of a habeas petition.").

Further, the INA, as amended by the REAL ID Act, "commits review of agency action" in the immigration context exclusively to "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2); *see also id*. § 1252(a)(5) (establishing that "a petition for review filed with an appropriate court of appeals ... shall be the sole and exclusive means for judicial review of an order of removal").  Read along with the

- 16 -

"exclusive jurisdiction" provision of § 1252(g), "any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." *Sadhvani v. Chertoff*, 460 F. Supp. 2d 114 (D.D.C. 2006), *aff'd*, 279 F. App'x 9 (D.C. Cir. 2008).

### 3.    Section 1252(f)(1) Forecloses Any Entitlement to a Stay.

Staying the effect of an agency decision in the context in which Plaintiffs allege is indeed injunctive or at the very least restrains the government's ability from carrying out a covered action. Put simply, Plaintiffs seek a stay of removal proceedings for a host of aliens. That is precisely what § 1252(f)(1) was meant to avoid. By providing that "no court (other than the Supreme Court) shall" have the power to grant coercive programmatic relief against the covered statutes, Section 1252(f)(1) operates on the premise that the lower courts will sometimes err and inappropriately restrict the government's ability to effectuate the removal process. *See* H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 161 (1996) ("[S]ingle district courts or courts of appeal do not have authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the U.S."). Any stay would be unsound because it would require the Court to issue an order applicable to "an entire class of aliens" *Aleman Gonzalez*, 596 U.S. at 550-51—here noncitizens from Somalia—rather than any "individual alien." 8 U.S.C. §1252(f)(1).

A court order staying agency action under § 705 is such a coercive order.  Such an order would "restrain" the agency's actions with respect to § 1229a and is thus analogous to a preliminary injunction in that an order under § 705 purports to maintain the status quo pending resolution of the merits.  5 U.S.C. § 705 (referencing "preserv[ation of] status or rights").  Indeed, courts routinely note that the standard for a § 705 stay "is the same as the standard for issuance of a preliminary injunction." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 586 (E.D. La. 2016), *aff 'd sub nom. Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017); *see, e.g., Texas v. EPA*, 829 F.3d 405, 424 (5th Cir. 2016); *Cronin v. USDA*, 919 F.2d 439,

- 17 -

446 (7th Cir. 1990); *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 19 (D.D.C. 2012). And here, an order under § 705 staying removal proceedings would "order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" removal proceedings and determinations, even if such an order is labeled as a stay. *Biden v. Texas*, 597 U.S. 785, 797 (2022); *see also* Injunction, Black's Law Dictionary (12th ed. 2024) (defining injunction as "[a] court order commanding or preventing an action," and defining stay as "[t]he postponement or halting of a proceeding, judgment, or the like" or "[a]n order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding.")

To be sure, there is no evidence that when Congress adopted § 705 it intended to expand preexisting authority by allowing district courts to enjoin agency policies. Instead, Congress simply codified existing equitable remedies. Section 705 allows a court to issue only that "process" that is "necessary and appropriate." 5 U.S.C. § 705. And the Supreme Court long ago concluded that "[t]he relevant legislative history of that section … indicates that it was primarily intended to reflect existing law" permitting appeals courts to stay certain agency actions pending direct review authorized by statute in the same manner that appellate courts can, in certain circumstances, stay a district court decision pending appeal. *Sampson*, 415 U.S. at 68 n.15*; see Scripps-Howard Radio*, 316 U.S. at 9-10 ("It has always been held … a federal court can stay the enforcement of a judgment pending the outcome of an appeal"). Section 705 was not intended "to fashion new rules of intervention for District Courts." *Sampson*, 415 U.S. at 68 n.15. Section 705 thus does not create any remedies distinct from traditional equitable relief. *Abbott v. Perez*, 585 U.S. 579, 595 (2018) ("[W]e have not allowed district courts to shield their orders from appellate review by avoiding the label injunction.") (cleaned up).

- 18 -

The Senate Report prepared in advance of the APA's enactment explains that the "first sentence" of § 705—relating to an agency's authority to postpone the effective date of a rule—simply "states existing law," while the "second sentence may be said to change existing law only to the extent that the language of the opinion in *Scripps-Howard* … may be interpreted to deny to reviewing courts the power to permit an applicant for a renewal of a license to continue to operate as if the original license had not expired, pending conclusion of the judicial review proceedings." S. Rep. No. 79-752, at 44 (1945), reprinted in GPO, Administrative Procedure Act: Legislative History, 1944-46, at 230 (1946), available at www.justice.gov/sites/default/files/jmd/legacy/2014/03/20/senaterept-752-1945.pdf.  The House Report separately noted that relief under § 705 requires a "proper showing" of the traditional prerequisites for relief.  H.R. Rep. No. 79-1980, at 43-44 (1946), reprinted in GPO, Administrative Procedure Act: Legislative History, 1944-46, at 277-78 (1946).

The Attorney General's Manual on the APA further supports the conclusion that § 705 does not create any new remedies. The Supreme Court has accorded deference to this manual because it was issued contemporaneously with passage of the APA and because of the "role played by the Department of Justice in drafting the legislation." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 546 (1978).  The Manual explains that "[t]he provisions of section 10 [the APA's judicial review provisions] constitute a general restatement of the principles of judicial review embodied in many statutes and judicial decisions," and "generally leave[] the mechanics of judicial review to be governed by other statutes and by judicial rules."  U.S. Dep't of Justice, Attorney General's Manual on the Administrative Procedure Act 93 (1946).  Referring to § 705, the Manual emphasizes that the "general procedural provisions governing the issuance of preliminary injunctions . . . appear to be applicable to the exercise of the power conferred by

- 19 -

that subsection." *Id*. at 107.  Thus, the text, context, legislative history, sources contemporary to the APA's passage, and relevant case law all show that § 705 does nothing more than preserve traditional equitable relief—relief that is barred here by § 1252(f)(1).

Plaintiffs are not asking this Court for an order on an agency adjudication pending judicial review of that adjudication.  On the contrary, they are broadly requesting that this Court stay various pending removal proceedings and "prevent" the government from implementing its chosen "course of action" with respect to § 1229a. *See Aleman Gonzalez*, 596 U.S. at 549 (orders requiring government to "refrain from actions that (again in the Government's view) are allowed" by a covered provision are barred by § 1252(f)).  Such an order, even if labeled a stay, is injunctive in effect and prohibited by § 1252(f)(1). *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers) ("[A]pplicants are seeking not merely a stay of a lower court judgment, but an injunction against the enforcement of a presumptively valid state statute"); *Wyoming v. Dep't of Interior*, 2018 WL 2727031, at *1 (10th Cir. June 4, 2018) ("[t]he district court's 'stay' effectively enjoins enforcement of the Rule").

At bottom, the Court cannot grant equitable remedies that "enjoin[] or restrain[] the operation" of § 1229a removal proceedings. Congress specifically foreclosed that.

**C.    Plaintiffs Are Unlikely to Prevail Under the APA Because They Fail to Identify Agency Action and Certainly No Final Agency Action.**

Plaintiffs bring claims under the APA asserting Defendants have adopted a policy (or a pattern or practice) to "rapidly set or advance immigration hearing dates . . . in non-detained Somali nationals' immigration cases[,]" and that this amount to a final agency action subject to challenge under the APA. 71-88, *See* Compl. ¶ 46; *see also* Pls. Mot. 24-27. But Plaintiffs fail to show that there is an agency action—let alone a final agency action to challenge here. Hence, they are unlikely to prevail on the merits of their claims.

- 20 -

First, Plaintiffs fail to demonstrate that any such policy exist. Plaintiffs admit there has been no public acknowledgement of the alleged policy. *See* Compl. ¶ 10. As a general matter, Plaintiffs disagree with individual immigration judge rulings as to whether to grant continuances, whether resets are appropriate, and how far out future hearings should be set. But the denial of a continuance is a legal issue committed to the discretion of the immigration judge under the good cause standard, as discussed *supra*. Plaintiffs' allegations that EOIR has a "policy" to fast-track adjudication or restrict continuances is without merit and belied by Defendants' PMs and the EOIR Policy Manual. Under PM 21-13:

> "A practitioner's workload must be controlled and managed so that each matter can be handled competently." 8 C.F.R. § 1003.102(q)(1). Thus, for a practitioner who takes on more cases than he or she can responsibly and professionally handle, necessitating the need for multiple continuances across multiple cases, it may be appropriate for an Immigration Judge to consider referral to EOIR disciplinary counsel for further action and possible sanction for a violation of 8 C.F.R. § 1003.102.

Immigration judges may consider a continuance's impact on the "efficient determination of the case" when adjudicating a continuance request. *See Matter of L-A-B-R-*, 27 I&N Dec. at 416. Moreover, immigration judges are aware that they cannot deny continuances merely because of case completion goals or individual performance appraisal metrics. *See Matter of Hashmi*, 24 I&N Dec. 785, 793–94 (BIA 2009). At bottom, Plaintiffs' seek to challenge an immigration judge's discretion to manage the docket over which they preside. Yet undisputedly, the immigration judge has broad discretion to manage its docket and exercising this discretion is not unlawful.

Moreover, generally, judicial review under the APA "is available only for 'final agency action.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (quoting 5 U.S.C. § 704). The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent[, ] or denial thereof, or failure to act." 5

U.S.C. § 551(13). In limiting APA review to "final" agency action, Congress restricted "pervasive oversight by federal courts over the manner... of agency compliance with ... congressional directives," which would "inject[] the judge into day-to-day agency management." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 67 (2004).  The Supreme Court has articulated "two conditions that generally must be satisfied for agency action to be 'final' under the APA." *Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citing *Bennett v. Spear*, 520 U.S. 154 (1997)). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* (quoting *Bennett*, 520 U.S. at 177). "[S]econd, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *Bennett*, 520 U.S. at 177-78). The APA thus permits courts to consider only those claims that challenge discrete, "identifiable" final actions with "concrete effects." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 (1990). Plaintiffs are not challenging an action that meets either condition. Plaintiffs are challenging the scheduling of ongoing removal proceedings and the denial of their motions to continue removal hearings. Neither scenario "mark[s] the consummation of the agency's decisionmaking process" in these unidentified and ongoing removal proceedings.

While Plaintiffs contend that a policy need not be in writing to be reviewable (Pls. Mot. ECF No. 30-1 at 24-25), Plaintiffs fail to establish that any such policy exists. Further, Plaintiffs seek a blanket stay of a sub-set of immigration removal proceedings. The final agency decision would be a removal order—if such a decision is reached— and § 1252(a)(5) channels judicial review for immigration proceedings to the appropriate court of appeals. *See* 8 U.S.C. § 1252(a)(5).

**II.      Plaintiffs Will Not Suffer Irreparable Harm Absent Emergency Relief.**

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). First, the moving party must

- 22 -

demonstrate an injury that is "'both certain and great'" and "of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id.* (emphasis in original) (quoting *Wis. Gas Co. v. Fed. Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Second, the injury must "be beyond remediation," meaning the possibility of corrective relief "at a later date . . . weighs heavily against a claim of irreparable harm." *Id.* at 297–98 (quoting *Wis. Gas*, 758 F.2d at 674). Plaintiffs have the burden to put forth sufficient evidence to satisfy this high standard. "The movant cannot simply make 'broad conclusory statements' about the existence of harm. Rather, [the movant] must 'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm[.]'" *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)). Plaintiffs fail to meet this burden.

The injuries identified by Hines Immigration Law, PLLC constitutes the very sort of economic harm that is not considered irreparable for purposes of obtaining preliminary relief. *See John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (per curiam) ("[I]t is 'well settled that economic loss does not, in and of itself, constitute irreparable harm[.]" (citation omitted)); *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327 F.2d 327, 335 (D.D.C. 2012) ("The first hurdle Plaintiffs face is that the harms they identify are economic in nature and therefore not generally irreparable."). Hines Immigration Law, PLLC claims "significant monetary injury". Pls. Mot. (ECF 3-1) at 20. Hines Immigration Law, PLLC claims she will have to "hire[] and pay for additional attorneys." *Id*. But this contention is speculative at best, as Hines Immigration Law PLLC does not allege that it has had to hire and pay for additional attorneys' *because* of any purported agency action. This assertion "leave[s] room for substantial doubt." *See Arriva Med LLC v. Dep't of Health & Human Servs.*, 239 F. Supp. 3d 266, 283 (D.D.C.

- 23 -

2017). Hines Immigration Law, PLLC claims she has been forced to stop accepting new clients. *See id.* But Hines Immigration Law, PLLC claims are not enough to show irreparable harm absent emergency relief. Purely economic loss, even when large sums of money are involved, typically will not constitute irreparable injury. *See Wis. Gas*, 758 F.2d at 674 (holding that it is "well settled that economic loss does not in and of itself constitute irreparable harm"); *Emily's List v. FEC*, 362 F. Supp. 2d 43, 52 (D.D.C. 2005). Monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business. *See Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n. 2 (D.C. Cir. 1977). The movant may not rely on "bare allegations" that the business will not survive absent a preliminary injunction. *Wis. Gas Co.*, 758 F.2 at 674. Instead, the movant must provide some evidence of irreparable harm: "the movant [must] substantiate the claim that irreparable injury is likely to occur" and "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* at 674 (internal quotation marks and citation omitted). This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Additionally, Plaintiffs cannot establish that the harm that they suffer is irreparable. Plaintiffs and their clients can avail themselves of relief If relief from removal can be afforded later, then there is no irreparable harm for the purposes of awarding extraordinary relief. *See Chaplaincy*, 454 F.3d at 297-98 (citing *Va. Petro. Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir.1958)); *Nken v. Holder*, 556 U.S. 418, 434 (2009). While Plaintiffs here are organizations, their clients can certainly obtain review of any issues through a petition for review. 8 U.S.C. §§

1252(a)(5), (b)(9); *see also Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 201 (3d Cir. 2013); *see also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue – whether legal or factual – arising from any removal-related activity can be reviewed only through the [petition-for-review] process.").

*Chaplaincy* is instructive and dispositive in this case.  There, a group of current and former Navy chaplains alleged that the Navy had "established, promoted, and maintained religious quotas and other discriminatory practices in the Navy Chaplain Corps in violation of the First and Fifth Amendments."  454 F.3d at 295 (citation modified).  Reviewing the denial of a preliminary injunction, the D.C. Circuit concluded that the appellants had not met their burden on irreparable harm because they had not "articulate[d] a tangible injury that is either certain and great" or irreparable.  *Id*. at 298.  The Court found the injury allegations speculative because the ultimate relief sought would only result in the *possibility* of plaintiffs' injuries being rectified.  *See id*.  The Court also rejected proffered irreparable harm theories because the plaintiffs could seek redress through other means.  *See id*.

Similar circumstances apply here.  The claims being raised could be reviewed through a petition for review brought by individual noncitizens. That avenue of review should foreclose the opportunity to seek extraordinary relief where the harm must be "irreparable."

Additionally, Plaintiffs' harms related to yet to be adjudicated removal proceedings are speculative at best and are comprised of "bare allegations." *Wis. Gas Co.*, 758 F.2 at 674. In addition, "the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" *Elec. Privacy Info. Ctr. v. Dep't of Just.* 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (citation omitted). Thus, legal authority is clear that, to meet the standard for irreparable harm, the movant must present sufficient evidence that the purported injury is certain,

great, actual, imminent, and beyond remediation.  Plaintiffs' claims are not beyond remediation because any negative final agency decision is subject to review by the appropriate appellate circuit court.

The harms the Advocates for Human Rights identify do not warrant emergency relief. Advocates for Human Rights claims that it is unable to facilitate legal services because it has been unable to find volunteer attorneys for prospective clients. *See* Pls. Mot. (ECF No. 3-1) at 22. Plaintiffs also allege that they are unable to observe court or immigration proceedings. *See id*. at 21. That Advocates for Human Rights may suffer some harm is insufficient for emergency relief. Advocates for Human Rights fails to identify irreparable harm that it will suffer directly. The Advocates for Human Rights view is myopic and fails to consider individuals who may benefit from a faster decision on asylum.

### III.  The Requested Relief is Contrary to Public Interests.

Plaintiffs emphasize the risks they may face in connection with the quantity of removal proceedings under their representation, and an attenuated risk of removal for the individuals they represent. Plaintiffs significantly neglect the well settled public interest in the enforcement of the United States' immigration laws. *See, e.g., United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken*, 556 U.S. at 435. There is "always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. That principle extends to the prompt resolution of determining removability because "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id*. (quoting AADC, 525 U.S., at 490). Contrary to Plaintiff's contention, "[a]ny time [the government] is enjoined by a court from effectuating [laws], it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).

Plaintiffs also neglect the public interest in having all aspects of removal proceedings considered in one proceeding, and then, if a final order is issued, on review to the appropriate court of appeals. The public will not be best served if the Defendants are forced to litigate collateral attacks on removal proceedings in three different forums, i.e., proceedings before immigration judges, district courts, and appellate courts. As explained *supra*, Congress instituted statutory prohibits to prevent this very scenario. Plaintiff also fail to consider those individuals that may benefit from faster asylum decisions.

**IV.     Any Emergency Relied Should Be Stayed Pending Appeal and a Bond Should Be Required.**

To the extent the Court issues any injunctive relief, Defendants respectfully request that such relief be stayed pending the disposition of any  appellate review that may be authorized by the Solicitor General, or at a minimum, administratively stayed for a period of nine days to allow the United States to seek an emergency, expedited stay from the Court of Appeals, if an appeal is authorized.

The Defendants also respectfully request that any injunctive relief be accompanied by a bond under Fed. R. Civ. P. 65(c), which provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  A bond is appropriate here given that any preliminary relief would potentially mandate that the Executive spend money that may not be recouped once distributed.

## CONCLUSION

For these reasons, Plaintiffs' Motion should be denied.

Dated: March 31, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____ */s/Kimberly A. Stratton* _____
    KIMBERLY A. STRATTON
    P.A. Bar #327725
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 417-4216
    kimberly.stratton@usdoj.gov

*Attorneys for the United States of America*

- 28 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HINES IMMIGRATION LAW, PLLC et al.,

      Plaintiffs,

    v.

Executive Office for Immigration Review et al.,

      Defendants.

Civil Action No. 26-1018 (CJN)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' response in opposition to Plaintiff's Emergency Motion For a Stay Under 5 U.S.C. § 705, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is denied

SO ORDERED:

_____
Date

_____
Carl J. Nichols
United States District Judge