# Exhibit E

Pursuant to 28 U.S.C. § 1746, I, Alexis Dutt, make this declaration.

1. I am attorney licensed in the state of Minnesota.
2. I specialize in immigration law, and have been practicing since 2018. I am primarily a litigator, and for my entire career, have been handling cases in removal proceedings.
3. It is common amongst immigration firms for immigrant populations to rely on referrals to trusted immigration attorneys. I would estimate that about half to two-thirds of my removal defense case load are Somali nationals, which has been the case since I began practicing.
4. Since February 2026, between one half to two-thirds of my Somali cases have been scheduled for master or individual hearings between March and July 2026. Some of these cases were previously scheduled for individual hearings in late 2026 or 2027. Some of these cases had orders stating that they were awaiting individual hearings.
5. At the Fort Snelling immigration court, individual hearings were commonly scheduled with at least 6 months' notice, and most commonly with more than a year notice. I would usually have between 2-5 individual hearings per month. Between now and July 31st, I am scheduled for more master and individual hearings than I would usually have in the course of two years.
6. Every single case that has been expedited is for a Somali national. It has required significant time and resources to ensure that each client is receiving ethical representation in these matters. In short, this is effectively punishing immigrant communities for seeking assistance from lawyers that their friends and family recommend, and it is punishing attorneys who work with specific communities.
7. Additionally, based on the actions being taken by OPLA attorneys during these master calendar hearings, there appears to be coordination between DHS and EOIR, or at minimum parallel policies that are in place to expedite these cases. For example, DHS attorneys are opposing good cause continuation requests and they are bringing motions to pretermit applications without full merits hearings.
8. There is no government interest in fast-tracking these cases, particularly when attorneys have provided good cause to request continuances. It appears that most of the judges who are handling these cases are usually handling matters in detained court. In detained court, those cases usually move much faster. The difference in those situations is that there is a clear financial cost to the government and human cost to the detainees that justifies the expedition of these cases. For these non-detained Somali nationals, there is no such government interest here. It does not hurt the government for these cases to be heard in August or September rather than April or May.

9. It appears that Courts have been told to decide these cases as quickly as possible. When asked for a continuance or a hearing date that is further out, multiple judges have said that their calendars "do not go out that far" or that they do not have any dates beyond the date being offered. Attorneys are getting scheduled for anywhere from 1 to 3 individual hearings in one day. When scheduled for multiple individual hearings in one day, the judges are finding that is not "good cause" for a continuance of either matter.

10. In some court rooms during master calendar hearings, judges have made comments suggesting that these cases are a "priority." During one master calendar hearing, a judge stated that they had been asked to "help out" on these cases and assigned these Somali dockets. That same judge stated a goal to resolve all of these cases within 6 months. When asked about the possibility of conflicting hearings in light of the quantity of cases, the judge said that "these cases would take priority" when it came to continuances on other matters.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 22, 2026.

_____

Alexis Dutt