UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **HINES IMMIGRATION LAW, PLLC**, et al.,<br><br>　　　　　*Plaintiffs,*<br><br>v.<br><br>**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**, et al.,<br><br>　　　　　*Defendants.* | **Case No. 26-cv-1018 (CJN)** |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION FOR A STAY
UNDER 5 U.S.C. § 705**

**TABLE OF CONTENTS**

Introduction ............................................................................................................................. 1

Argument ............................................................................................................................... 2

I.   Defendants' threshold arguments fail. .......................................................................... 2

    A. Plaintiffs have shown a substantial likelihood of standing. ................................. 2

       i.    Plaintiffs have established injuries sufficient for direct organizational standing. ....... 2

       ii.   Plaintiffs have established traceability and redressability. ........................................ 6

    B. Section 1252 does not strip this Court's authority to review Plaintiffs' claims and issue their requested relief. .................................................................................... 6

       i.    Section 1252(b)(9) does not bar review of Plaintiffs' claims. .................................. 7

       ii.   Section 1252(g) does not bar review of Plaintiffs' claims. ..................................... 11

       iii.  Section 1252(f)(1) does not bar Plaintiffs' requested relief. ................................... 14

II.  Plaintiffs are likely to succeed on the merits of their APA claims. .................................... 17

III. Plaintiffs face irreparable harm absent emergency relief. .................................................. 19

IV. The balance of the equities and the public interest favor Plaintiffs. ................................... 21

V.  Defendants are not entitled to a stay pending appeal, and Rule 65(c)'s bond requirement does not apply in this case. ..................................................................................... 22

Conclusion ............................................................................................................................ 23

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007)............................................................................................. 10

*Open Cmtys. All. v. Carson*,
286 F. Supp. 3d 148 (D.D.C. 2017) ............................................................................. 21

*Alvarez v. ICE*,
818 F.3d 1194 (11th Cir. 2016) ................................................................................... 14

*Amica Ctr. for Immigrant Rts. v. EOIR*,
No. CV 26-696, 2026 WL 662494 (D.D.C. Mar. 8, 2026)........................................ 9, 14

*Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*,
972 F.3d 83 (D.C. Cir. 2020)....................................................................................... 17

*Cap. Area Immigrants' Rts. Coal. v. Trump*,
471 F. Supp. 3d 25 (D.D.C. 2020)................................................................................. 7

*Caplin & Drysdale, Chartered v. United States*,
491 U.S. 617 (1989)....................................................................................................... 2

*Centro Legal de la Raza v. EOIR*,
524 F. Supp. 3d 919 (N.D. Cal. 2021) ........................................................................... 9

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006)..................................................................................... 20

*Chhoeun v. Marin*,
306 F. Supp. 3d 1147 (C.D. Cal. 2018) .......................................................................... 9

*Coal. for Humane Immigrant Rts. v. Noem*,
805 F. Supp. 3d 48 (D.D.C. 2025)............................................................................... 15

*Council on Am.-Islamic Rels. v. Gaubatz*,
667 F. Supp. 2d 67 (D.D.C. 2009) ............................................................................... 23

*Ctr. for Responsible Sci. v. Gottlieb*,
346 F. Supp. 3d 29 (D.D.C. 2018)................................................................................. 4

*DSE, Inc. v. United States*,
169 F.3d 21 (D.C. Cir. 1999)....................................................................................... 23

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*,
　950 F.3d 177 (3d Cir. 2020) ................................................................................ 8, 10

*Equal Rts. Ctr. v. Post Props., Inc.*,
　633 F.3d 1136 (D.C. Cir. 2011) .................................................................................. 5

*Escobar Molina v. DHS*,
　811 F. Supp. 3d 1 (D.D.C. 2025) ...................................................................... 12, 17

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
　28 F.3d 1268 (D.C. Cir. 1994) .................................................................................... 4

*FDA v. All. for Hippocratic Med.*,
　602 U.S. 367 (2024) ................................................................................................ 3, 5

*Florida v. United States*,
　No. 21CV1066, 2022 WL 2431414 (N.D. Fla. May 4, 2022) .............................. 11, 16, 18

*Food & Water Watch, Inc. v. Vilsack*,
　808 F.3d 905 (D.C. Cir. 2015) ............................................................................ 2, 3, 5

*Garland v. Aleman Gonzalez*,
　596 U.S. 543 (2022) .................................................................................................. 15

*Grace v. Barr*,
　965 F.3d 883 (D.C. Cir. 2020) .................................................................................. 16

*Havens Realty Corp. v. Coleman*,
　455 U.S. 363 (1982) .................................................................................................... 3

*Humane Soc'y of the U.S. v. Dep't of Agric.*,
　41 F.4th 564 (D.C. Cir. 2022) .................................................................................... 2

*Humphries v. Various Fed. USINS Emps.*,
　164 F.3d 936 (5th Cir. 1999) .................................................................................... 14

*Immigrant Advoc. Ctr. v. DHS*,
　783 F. Supp. 3d 200 (D.D.C. 2025) .......................................................................... 15

*Immigrant Advoc. Ctr. v. Trump*,
　475 F. Supp. 3d 1194 (D. Or. 2020) ................................................... 8, 9, 12, 16, 19

*Immigrant Advocs. Response Collaborative v. United States*,
　No. 25-cv-2279, 2026 WL 746923 (D.D.C. Mar. 17, 2026) ............................... 7, 11

iii

*Immigrant Defs. L. Ctr. v. Noem*,
    145 F.4th 972 (9th Cir. 2025) ........................................................................... 15

*Immigrant Defs. L. Ctr. v. Noem*,
    781 F. Supp. 3d 1011 (C.D. Cal. 2025) ......................................................... 8, 9

*Int'l Bhd. of Elec. Workers, Loc. Union No. 474, AFL-CIO v. NLRB*,
    814 F.2d 697 (D.C. Cir. 1987) ........................................................................ 16

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) .......................................................................... 9

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ...................................................................................... 7, 8

*Jimenez-Angeles v. Ashcroft*,
    291 F.3d 594 (9th Cir. 2002) .......................................................................... 13

*KalshiEX LLC v. CFTC*,
    119 F.4th 58 (D.C. Cir. 2024) ........................................................................ 22

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) .......................................................................................... 2

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
    780 F. Supp. 3d 135 (D.D.C. 2025) ................................................................. 3

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ........................................................................... 20

*M-J-M-A- v. Hermosillo*,
    No. 25-cv-02011, 2026 WL 562063 (D. Or. Feb. 27, 2026) ........................... 18

*Make the Rd. N.Y. v. Noem*,
    No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) ........................... 14

*Make the Rd. N.Y. v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ......................................................................... 6

*Maryland v. King*,
    567 U.S. 1301 (2012) ..................................................................................... 21

*Mass. Coal. for Immigr. Reform v. DHS*,
    621 F. Supp. 3d 84 (D.D.C. 2022) ................................................................... 7

iv

*Massachusetts v. EPA*,
    549 U.S. 497 (2007)..................................................................................................... 2

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)................................................................................................... 15

*Nat'l Immigr. Project of Nat'l Lawyers Guild v. EOIR*,
    456 F. Supp. 3d 16 (D.D.C. 2020) ..................................................................... 10, 11

*Nava v. DHS*,
    435 F. Supp. 3d 880 (N.D. Ill. 2020) ....................................................................... 19

*Nken v. Holder*,
    556 U.S. 418 (2009)......................................................................................... 15, 21, 22

*NTEU v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996) ................................................................................ 3

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019) .................................................................. 7, 8, 11

*PETA v. USDA*,
    797 F.3d 1087 (D.C. Cir. 2015) ................................................................................ 3

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ....................................................................... 16, 17

*Ramirez Ovando v. Noem*,
    810 F. Supp. 3d 1209 (D. Colo. 2025)................................................................... 18, 19

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*,
    793 F. Supp. 3d 19 (D.D.C. 2025) ........................................................................... 14

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)................................................................................................ 13, 14

*Robert F. Kennedy Hum. Rts. v. State Dep't,*
    No. CV 25-1774, 2026 WL 820811 (D.D.C. Mar. 25, 2026).................................... 3, 4, 5

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ................................................................................ 16

*Russello v. United States*,
    464 U.S. 16 (1983)..................................................................................................... 8

*Saadulloev v. Garland*,
No. 23-cv-00106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024) ..................................... 14

*Sissoko v. Rocha*,
509 F.3d 947 (9th Cir. 2007) ........................................................................................... 14

*Tercero v. Holder*,
510 F. App'x 761 (10th Cir. 2013) ................................................................................... 13

*Texas v. Biden*,
646 F. Supp. 3d 753 (N.D. Tex. 2022) ............................................................................ 15

*Texas v. United States*,
40 F.4th 205 (5th Cir. 2022) ............................................................................................ 15

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015) ........................................................................................... 11

*Torres v. DHS*,
411 F. Supp. 3d 1036 (C.D. Cal. 2019) ........................................................................... 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................................... 6

*Turlock Irrigation Dist. v. FERC*,
786 F.3d 18 (D.C. Cir. 2015) ............................................................................................. 3

*U.S. Dep't of Lab. v. Triplett*,
494 U.S. 715 (1990) ........................................................................................................... 2

*Velesaca v. Decker*,
458 F. Supp. 3d 224 (S.D.N.Y. 2020) .............................................................................. 17

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ......................................................................................... 12

*White Coat Waste Project, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
No. 22-cv-00006, 2023 WL 4930093 (D.D.C. Aug. 2, 2023) ............................................ 3

*Wis. Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ......................................................................................... 20

*Yazdanpanahderav v. U.S. Dep't of State*,
No. 23-cv-3688, 2024 WL 3010874 (D.D.C. June 14, 2024) ........................................... 17

## STATUTES

5 U.S.C. § 705................................................................................................ 1, 14, 15, 22, 23

8 U.S.C. § 1101(a)(47)........................................................................................................ 21

8 U.S.C. § 1231(g) ............................................................................................................. 13

8 U.S.C. § 1252.................................................................................................................... 6

8 U.S.C. § 1252(b)(9) ..................................................................................... 7, 8, 9, 10, 11, 12

8 U.S.C. § 1252(f)(1) ....................................................................................... 8, 14, 15, 16

8 U.S.C. § 1252(g) ........................................................................................... 11, 12, 13, 14

## FEDERAL RULES

Fed. R. Civ. P. 65(c) ......................................................................................................... 22

**INTRODUCTION**

Defendants do not dispute that the Somali Fast-Track Policy is contrary to law or arbitrary and capricious. Their defense instead boils down to the extraordinary claim that no such Policy exists and that, even if it did, this Court is powerless to review it and grant relief. To make their arguments, Defendants ignore 18 declarations from immigration attorneys across the country, in-court statements from immigration judges, and data showing that two-thirds of non-detained Somali cases have been reassigned such that the average lead time for Somali noncitizens' individual merits hearings has plummeted from 518 days to 73 days—all while non-Somali cases proceed as normal. Defendants also ignore the plain text of the Immigration and Nationality Act (INA), the Administrative Procedure Act (APA), and countless cases within this circuit and others. The weight of that authority confirms that district courts retain jurisdiction over claims brought by organizations challenging general immigration policies and that courts may stay those policies under the APA.

Of course, it is no surprise that Defendants fail to engage with Plaintiffs' evidence and arguments. The Somali Fast-Track Policy is the opposite of reasoned and deliberate policymaking required by the APA, and Plaintiffs' undisputed evidence shows that it will significantly and irreparably harm Plaintiffs while depriving Somali immigrants of the full and fair proceedings guaranteed by our laws.

This Court should grant Plaintiffs' motion and stay the Somali Fast-Track Policy under 5 U.S.C. § 705. Because Plaintiffs are already experiencing irreparable harm from this Policy, and because Plaintiff Hines Immigration Law has several high-stakes individual merits hearings scheduled in rapid succession from April 15, 2026, onward, Plaintiffs respectfully request a ruling by April 10.

1

## ARGUMENT

### I.  Defendants' threshold arguments fail.

#### A.  Plaintiffs have shown a substantial likelihood of standing.

Plaintiffs have shown a substantial likelihood of standing to maintain their challenge because they have established (1) "injury in fact" that is (2) "fairly traceable to the challenged action of the defendant" and (3) could be "redressed by a favorable decision." *Humane Soc'y of the U.S. v. Dep't of Agric.*, 41 F.4th 564, 567 (D.C. Cir. 2022) (citation omitted); *see Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Although only one Plaintiff need have standing for the claims asserted, *see Massachusetts v. EPA*, 549 U.S. 497, 518 (2007), both Plaintiffs have readily demonstrated standing because the Somali Fast-Track Policy harms their core business activities. Defendants' arguments to the contrary either mischaracterize the record or create imagined deficiencies in Plaintiffs' standing that have no legal relevance. Likewise, Defendants' passing contention that Plaintiffs have not established redressability rests on a fundamental misunderstanding of the agency action that Plaintiffs challenge.

#### i.  Plaintiffs have established injuries sufficient for direct organizational standing.

Plaintiffs have organizational standing because the Somali Fast-Track Policy directly interferes with their core activity of providing legal representation and assistance to immigrants, including non-detained Somali noncitizens, in removal proceedings.[1] "[O]rganizations may have

---

[1] Plaintiffs do not assert associational standing, nor do they rely on third-party standing on behalf of their clients to assert their APA claims. Nevertheless, *Kowalski v. Tesmer*, 543 U.S. 125 (2004), is easily distinguishable. *See* Defs.' Opp. to Pls.' Emergency Mot. 11, Dkt. No. 11. Although *Kowalski* precludes lawyers from asserting third-party standing on behalf of hypothetical future clients, *see* 543 U.S. at 134 n.5, both Hines Immigration Law and The Advocates for Human Rights have current clients whose right to a fair hearing the Policy denies. Lawyers traditionally have third-party standing to assert such harms. *See, e.g.*, *U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 720 (1990); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 n.3 (1989).

standing 'to sue on their own behalf for injuries they have sustained.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)). Courts in this circuit have understood this test to be met where (1) "the agency's action or omission . . . injured the [organization's] interest," and (2) "the organization used its resources to counteract that harm." *Robert F. Kennedy Hum. Rts. v. State Dep't*, No. 25-cv-1774, 2026 WL 820811, at *5 (D.D.C. Mar. 25, 2026) (alteration in original) (quoting *PETA v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)); *see also White Coat Waste Project, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 22-cv-00006, 2023 WL 4930093, at *3 (D.D.C. Aug. 2, 2023) (same); *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 180 (D.D.C. 2025) (observing that "[p]rior circuit precedent is consistent with the organizational-standing principles articulated in *Alliance for Hippocratic Medicine*").

Plaintiffs easily satisfy that standard. First, the Policy "perceptibly impair[s] the organization[s'] ability to provide services," *Food & Water Watch*, 808 F.3d at 919 (quoting *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015)), which "inhibit[s]" their "daily operations," *PETA*, 797 F.3d at 1094 (citation omitted), and makes "the organization[s'] activities more difficult," *NTEU v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) (emphasis omitted). Plaintiffs' core activities include providing and facilitating high-quality legal services to non-detained asylum applicants before the Executive Office for Immigration Review (EOIR). Decl. of Kelsey Hines ¶¶ 8, 13, Dkt. No. 3-2; Decl. of Hanne Sandison ¶¶ 10, 16, 27, Dkt. No. 3-3. The Policy has dramatically compressed the time in which legal service providers like Plaintiffs must prepare cases for their non-detained Somali clients. *See, e.g.*, Hines Decl. ¶¶ 77–82. Therefore, it is nearly impossible for Hines Immigration Law to meet its core business obligations to both Somali and other clients while the Policy remains in place. Hines Decl. ¶¶ 77, 83–87. The Hines

3

Firm has thus completely closed its doors to new business, is unable to pay its sole attorney a full salary, and faces severe reputational harm. Hines Decl. ¶¶ 90–92, 95, 97–99. Likewise, The Advocates for Human Rights (AHR) has been unable to find or provide full legal representation for Somali clients in urgent need under the Policy. Sandison Decl. ¶¶ 28–30. And because hearings under the Policy are largely proceeding virtually in front of immigration judges outside the respondent's jurisdiction, AHR's volunteer observers can no longer access, document, and report on hearings for non-detained Somali immigrants. Sandison Decl. ¶ 36. None of these harms "rest on speculation," *contra* Defs.' Opp. to Pls.' Emergency Mot. 9, Dkt. No. 11—they are concrete injuries Plaintiffs have already suffered and will continue to suffer absent relief.

These are also textbook harms to the organizations themselves, not "mere setback[s] to [Plaintiffs'] social interests." Defs.' Opp.  10 (citation omitted); *see also Robert F. Kennedy Hum. Rts.*, 2026 WL 820811, at *6. Defendants do not meaningfully dispute that the Policy interferes with Plaintiffs' core activities, instead making much of whether the Policy directly "regulates" Plaintiffs. Defs.' Opp. 11–12. However, Defendants mischaracterize the critical inquiry, which does not rest on direct regulation, but instead on whether "something about the challenged action itself—rather than the organization's response to it—makes the organization's task more difficult." *Ctr. for Responsible Sci. v. Gottlieb*, 346 F. Supp. 3d 29, 41 (D.D.C. 2018), *aff'd sub nom. Ctr. for Responsible Sci. v. Hahn*, 809 F. App'x 10 (D.C. Cir. 2020); *see also Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994) (organizational standing based not on "diversion of resources from one program to another, but rather on the alleged injury that the defendants' actions themselves had inflicted upon the organization's programs"). That is precisely the case here. The Policy directly "interfere[s] with active attorney-client relationships and frustrate[s] the ongoing legal representation that sits at the heart of these

4

organizations' missions," amounting to a "structural impairment of the service itself." *Robert F. Kennedy Hum. Rts.*, 2026 WL 820811, at \*6, \*9.[2]

Second, both Plaintiffs have "used [their] resources to counteract . . . harm." *Food & Water Watch*, 808 F.3d at 919 (citation omitted). The Hines Firm has added part-time interns, its paralegals have taken on new responsibilities, and everyone is working more hours than they did before. Hines Decl. ¶¶ 88, 92. And AHR has diverted managing and staff attorney time from regular clients and projects to providing emergency services to unrepresented Somalis. Sandison Decl. ¶¶ 30–33. "These diversions are specific, documented, and directly responsive to the impairment identified under the first prong." *Robert F. Kennedy Hum. Rts.*, 2026 WL 820811, at \*10. Although Defendants attempt to dismiss them as "[s]elf-inflicted budgetary choice[s]" to "challenge . . . federal policy that [Plaintiffs] dislike," Defs.' Opp. 10–11 (citation omitted), that is far from the case. *Cf. All. for Hippocratic Med.*, 602 U.S. at 385–86, 395 (finding lack of injury where plaintiff had no direct-service relationship with affected patients and spent money only to oppose policy). Here, Plaintiffs are diverting their resources "to deliver services that the [P]olicy had disrupted." *Robert F. Kennedy Hum. Rts.*, 2026 WL 820811, at \*10. Indeed, Defendants' arguments would suggest that Plaintiffs "voluntarily, or willful[ly], divert[ing] [their] resources . . . automatically mean[s] that [they] cannot suffer an injury sufficient to confer standing." *Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011) (first alteration in original) (internal quotation marks and citation omitted). That is not the law. *Id.*[3]

---

[2] Defendants' argument that Plaintiffs' harms rely on "the independent actions of immigration judges" again misunderstands the object of Plaintiffs' challenge. *See* Defs.' Opp. 10. As detailed above, the Policy itself harms Plaintiffs' core business activities, irrespective of the actions of any individual immigration judge.

[3] Aside from the harm to mission and diversion of resources that establishes organizational standing, the Hines Firm has also shown financial and reputational injury stemming from the

### ii. Plaintiffs have established traceability and redressability.

Plaintiffs have also established traceability and redressability. Plaintiffs' injuries flow directly from the Policy's fast-tracking and reassignment of non-detained Somali cases and the resulting need for increased support with legal representation on a compressed timeline. Their injuries would thus be redressed by an immediate stay of the Policy and a return to the longstanding status quo in immigration proceedings. Defendants' passing contention that "Plaintiffs fail to link their alleged injuries to any illegal action, let alone one that is likely to be redressed by a favorable decision," Defs.' Opp. 10, is one of many misstatements of Plaintiffs' challenge. As detailed below, Plaintiffs do not challenge any particular removal order or subset of removal proceedings, but rather Defendants' blanket decision to single out and expedite the immigration proceedings of non-detained Somali noncitizens on a dedicated national docket. *See infra* Sections I.B & II.

### B. Section 1252 does not strip this Court's authority to review Plaintiffs' claims and issue their requested relief.

Defendants' arguments that 8 U.S.C. § 1252 divests this Court of jurisdiction, Defs.' Opp. 13–20, do not overcome the "well-settled and strong presumption in favor of judicial review," *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 624 (D.C. Cir. 2020) (internal quotation marks and citation omitted). At bottom, Plaintiffs do not challenge any individual removal decisions, and the relief they seek would not require this Court to overturn any removal order or enjoin any provision of the INA. Plaintiffs instead attack Defendants' failure to comply with the strictures of the APA when they adopted a new policy of reassigning and fast-tracking non-detained Somali immigration proceedings. This Court has jurisdiction to review that challenge.

---

Policy. Hines Decl. ¶¶ 90–92, 95, 97–99. Those injuries independently suffice to establish standing as well. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

6

### i.    Section 1252(b)(9) does not bar review of Plaintiffs' claims.

First, § 1252(b)(9) does not bar review of Plaintiffs' claims. It provides: "With respect to review of an order of removal under subsection (a)(1), . . . [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section." § 1252(b)(9). This provision "has built-in limits": it "applies only to claims that arise from removal proceedings." *O.A. v. Trump*, 404 F. Supp. 3d 109, 129 (D.D.C. 2019) (citation omitted); *see also Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25, 40 (D.D.C. 2020) (explaining that § 1252(b)(9) "appl[ies] to challenges that either seek review of a removal order or involve questions arising from a removal action or proceeding"). And "when confronted with capacious phrases like 'arising from,'" the Supreme Court has "eschewed uncritical literalism leading to results that no sensible person could have intended." *Jennings v. Rodriguez*, 583 U.S. 281, 293–94 (2018) (plurality opinion) (internal quotation marks and citation omitted).

At the outset, Plaintiffs are organizations bringing claims on behalf of themselves, based on their own injuries, as opposed to individual noncitizens in removal proceedings. *See supra* Section I.A. As Judge McFadden has explained, § 1252(b)(9) does not apply where the plaintiff "will never be subject to a removal proceeding under the INA," since "there will never be a final order of removal through which they could" bring a challenge. *Mass. Coal. for Immigr. Reform v. DHS*, 621 F. Supp. 3d 84, 99 (D.D.C. 2022); *see also Immigrant Advocs. Response Collaborative v. United States*, No. 25-CV-2279, 2026 WL 746923, at *5 (D.D.C. Mar. 17, 2026) (holding that § 1252(b)(9) "applies only with respect to review of an order of removal" and therefore was not triggered where organizations challenged "policies resulting in case dismissals, not final orders of removal").

That is the case here. There is no way for Plaintiffs, as organizations, to obtain judicial review of the Policy by challenging "a final order" of removal, as the statute contemplates. § 1252(b)(9); *see E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) ("[T]he point of [§ 1252(b)(9)] is to channel claims into a single petition for review, not to bar claims that do not fit within that process."); *O.A.*, 404 F. Supp. 3d at 130 (reasoning that "if there is no final order of removal, there is nothing into which to fold the precedent challenges," and therefore § 1252(b)(9) does not apply); *cf. Jennings*, 583 U.S. at 293 (plurality opinion) (declining to interpret "arising from" in an "extreme way" that would make certain claims "effectively unreviewable"). Accordingly, this kind of systemic challenge on behalf of organizational plaintiffs who are not—and could not be—in removal proceedings does not trigger § 1252(b)(9)'s jurisdictional bar. *Las Ams. Immigrant Advoc. Ctr. v. Trump*, 475 F. Supp. 3d 1194, 1209 (D. Or. 2020) ("Allowing organizational plaintiffs to bring claims alleging systemic problems, independent of any removal orders, that allegedly cause harms specific to those organizations does not thwart the purpose of § 1252(b)(9)."); *Immigrant Defs. L. Ctr. v. Noem*, 781 F. Supp. 3d 1011, 1044 (C.D. Cal. 2025) (holding organizational plaintiff's claim was not barred by § 1252(b)(9)).[4]

Furthermore, there are a host of immigration-related claims that § 1252(b)(9) does not bar, i.e., any claim that does not fall within the provision's "built-in limits." *O.A.*, 404 F. Supp. 3d at 129 (citation omitted). For example, courts have repeatedly held that § 1252(b)(9) does not bar a

---

[4] Indeed, elsewhere in the same section, Congress explicitly applies § 1252(f)(1)'s bar on injunctive relief "[r]egardless of the nature of the action or claim or of the identity of the party or parties bringing the action." § 1252(f)(1); *see infra* Section I.B.iii. The statute's omission of any such language in § 1252(b)(9) should therefore be understood as deliberate. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (citation omitted)). Accordingly, § 1252(b)(9) applies only to individuals and not to organizations like Plaintiffs.

8

"facial challenge[] to a regulation" that seeks "to set aside the regulation itself." *Id.* at 132; *accord, e.g.*, *Amica Ctr. for Immigrant Rts. v. EOIR*, No. CV 26-696, 2026 WL 662494, at \*19 n.5 (D.D.C. Mar. 8, 2026) (finding § 1252(b)(9) did not divest court of jurisdiction where plaintiffs challenged interim final rule that altered procedure applicable to all administrative immigration appeals and sought to set aside the regulation itself). Courts have likewise concluded that they retain jurisdiction over claims that "cannot be raised in an individual removal proceeding." *Centro Legal de la Raza v. EOIR*, 524 F. Supp. 3d 919, 953 (N.D. Cal. 2021) (plaintiffs sought declaratory and injunctive relief against rule, so relief was not directed at overturning or challenging any individual removal order). And courts have held that claims collateral to an immigrant's removal proceedings are reviewable notwithstanding § 1252(b)(9). *See, e.g.*, *Immigrant Defs.*, 781 F. Supp. 3d at 1044 (holding that § 1252(b)(9) did not apply where plaintiffs did not "directly challenge the bases for their orders of removal" but rather sought to "avail themselves of the administrative system that exists to litigate their immigration cases" (internal quotation marks omitted)); *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1159 (C.D. Cal. 2018) (finding § 1252(b)(9) did not apply where petitioners' requested relief would "not entitle them to any substantive benefits" and instead was "limited to 'a day in court' to comport with due process").

Plaintiffs' challenge fits squarely within the parameters of the cases above and outside § 1252(b)(9)'s reach. Plaintiffs do not attack any individual action or order to remove a noncitizen, and granting a stay of the Somali Fast-Track Policy would not "require any removal order to be overturned." *Las Ams.*, 475 F. Supp. 3d at 1209. Instead, Plaintiffs take issue with the Policy's upending of "the immigration *process*," *id.*, and therefore seek to set aside the Policy itself.

Defendants rely on inapposite cases where individual noncitizens' claims were barred under § 1252(b)(9). Defs.' Opp. 14; *see J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029 (9th Cir. 2016)

9

(where individual minors in removal proceedings raised right-to-counsel claims, court held those claims had to be brought through petition for review process); *E.O.H.C.*, 950 F.3d at 181, 187–88 (individual noncitizens' statutory right-to-counsel claim could be redressed in removal proceedings); *Aguilar v. ICE*, 510 F.3d 1, 5, 14 (1st Cir. 2007) (noncitizens could seek review of right-to-counsel claims from Board of Immigration Appeals and then from court of appeals). Those circumstances are plainly distinct from this case, which is brought by legal service providers—not individuals in removal proceedings—to challenge a generally applicable policy. The Hines Firm and AHR cannot avail themselves of the petition for review process to remedy the harms the Policy has inflicted on them.

Nor does this case resemble *National Immigration Project of National Lawyers Guild v. EOIR*, 456 F. Supp. 3d 16 (D.D.C. 2020). There, the plaintiffs were five noncitizens and three organizations asserting the injuries of their individual members that represented immigrants. *Id.* at 23–24. The court concluded that none of the plaintiffs had standing, *id.* at 26–28, and that, in any event, the plaintiffs' access-to-counsel and due process claims were likely barred by § 1252(b)(9) because "[w]hether there has been a violation of any immigration petitioner's right to counsel will depend on the specific facts that arise from his or her removal proceedings," *id.* at 29. As a result, those claims were reviewable only in the court of appeals. *Id.* The same is not true in this case: Plaintiffs are not noncitizens or individual attorneys raising case-by-case concerns, and their claims do not depend on "the specific facts" of any individual removal proceeding. Instead, they are organizations challenging a systemic policy that has frustrated their relationship with clients across the board. Hines Decl. ¶¶ 92–95; Sandison Decl. ¶¶ 29–31. Plaintiffs' injuries "could not be remedied through a petition to the relevant court of appeals." *Nat'l Immigr. Project*, 456 F. Supp. 3d at 30 n.7. And their challenge to "the validity of a regulation of general applicability"

falls within the "exception to [§ 1252(b)(9)'s] bar that has been recognized in this circuit." *Id.* at 29 (quoting *O.A.*, 404 F. Supp. 3d at 128).

### ii. Section 1252(g) does not bar review of Plaintiffs' claims.

Defendants' contention that § 1252(g) bars review fares no better. Defs.' Opp. 14. Under that provision, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." § 1252(g).

At the outset, Defendants fail to grapple with the text of § 1252(g), which applies only to claims "by or on behalf of" a noncitizen. Here, of course, Plaintiffs are not noncitizens—they are legal service providers bringing their own claims, asserting their own injuries, and seeking relief to redress those injuries. On that basis alone, Defendants' attempt to invoke § 1252(g) falls short. *See Texas v. United States*, 809 F.3d 134, 164 (5th Cir. 2015) (concluding that § 1252(g) did not apply where states were "not bringing a 'cause or claim by or on behalf of any [noncitizen]'" but rather were asserting "their own right to the APA's procedural protections"); *Immigrant Advocs.*, 2026 WL 746923, at *5 (challenges did not trigger § 1252(g) where "organizational Plaintiffs are not themselves [noncitizens], and they assert injuries to their own operations, rather than bringing claims 'on behalf of any [noncitizen]' they serve"); *Florida v. United States*, No. 21CV1066, 2022 WL 2431414, at *11 (N.D. Fla. May 4, 2022) (holding that § 1252(g) did not bar judicial review of challenged policies because it "only preclude[s] review of individual immigration decisions").

Even setting that problem aside, § 1252(g) does not bar Plaintiffs' claims. The Supreme Court addressed the scope of the provision in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), explaining that it "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases,

11

or *execute* removal orders.'" *Id.* at 482. The Court then emphasized that there are "many *other* decisions or actions that may be part of the deportation process," including the decision "to reschedule the deportation hearing." *Id.* (emphasis added). The Court thus directly contemplated that scheduling determinations like those dictated by the Somali Fast-Track Policy do not fall within the narrow scope of § 1252(g). *See also Las Ams.*, 475 F. Supp. 3d at 1210 (explaining that if "§ 1252(b)(9) does not bar jurisdiction, § 1252(g) cannot" either, because the latter is narrower in scope than the former).

Moreover, the Ninth Circuit held that § 1252(g) did not bar immigrants' due process claims that the forms they received in removal proceedings failed to adequately advise them of their rights. *Walters v. Reno*, 145 F.3d 1032, 1036 (9th Cir. 1998). The court explained that the claims did not arise from any decision to "commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 1052. Instead, they were "general collateral challenges to unconstitutional practices and policies used by the agency." *Id.* (citation omitted).

The same logic applies here. Plaintiffs' objective in this case is not "to obtain judicial review of the merits of their [removal] proceedings." *Id.* (Indeed, Plaintiffs do not even have "removal proceedings" to speak of because they are not individuals.) Plaintiffs instead allege that, as a general matter, the re-assigned, fast-tracked proceedings Defendants have chosen to adopt for non-detained Somalis is unlawful. That challenge is not foreclosed by § 1252(g). *See Escobar Molina v. DHS*, 811 F. Supp. 3d 1, 42 (D.D.C. 2025) (rejecting government's invocation of § 1252(g) where plaintiffs challenged "neither a final order of removal nor a discretionary prosecutorial decision to commence, adjudicate, or execute removal, but rather the defendants' alleged policy and practice of making civil immigration arrests without the probable cause required under the INA[]").

Defendants insist that § 1252(g) bars review of "where to commence proceedings." Defs.' Opp. 16. It follows, they say, that "choosing to commence proceedings outside the Somali noncitizen's venue" is not subject to review. Defs.' Opp. 16 (internal quotation marks and citation omitted). Even assuming that were true, this argument ignores that Defendants are not "commencing" proceedings outside Somali noncitizens' venue; they are reassigning cases already in progress. *See* Pls.' Mem. of Law in Supp. of Emergency Mot. for Stay 14–15, Dkt. No. 3-1; Decl. of Dr. Joseph Gunther ¶¶ 9, 22–32, Dkt. No. 10-1 (showing that short-notice reassigned Somali cases were already open as of December 31, 2025).[5] And it is untethered from the text of the statute, which encompasses the Attorney General's "decision or action . . . to commence proceedings." The provision says nothing about the decision to move the location of those proceedings, which is more naturally understood as one of the "many other decisions or actions that may be part of the deportation process." *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 482. And the only case Defendants cite provides no support because it concerned the Attorney General's discretionary decision as to where to detain the plaintiff pending removal proceedings. *See Tercero v. Holder*, 510 F. App'x 761, 766 (10th Cir. 2013) (noting that under 8 U.S.C. § 1231(g), the Attorney General "shall arrange for appropriate places of detention for [noncitizens] detained pending removal or a decision on removal"). That is far afield from a policy that shuttles non-detained immigrants of one nationality to a subset of immigration judges outside their home jurisdictions.[6]

---

[5] Plaintiffs' motion for leave to file Dr. Gunther's declaration, Dkt. No. 10, is pending.

[6] For similar reasons, Defendants' observation that § 1252(g) bars challenges to decisions about "whether and when to commence removal proceedings" does not get them anywhere. Defs.' Opp. 15 (citing *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002)). Plaintiffs do not challenge any such decisions, so Defendants' cited cases invoking the § 1252(g) bar in that context are inapposite. *See Jimenez-Angeles*, 291 F.3d at 599 (court lacked jurisdiction to review

13

### iii. Section 1252(f)(1) does not bar Plaintiffs' requested relief.

Finally, Defendants are wrong to argue that § 1252(f)(1) forecloses the relief Plaintiffs seek. Defs.' Opp. 17. The provision states that "[r]egardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter." § 1252(f)(1).

Again, the text of the provision makes its inapplicability obvious. Section 1252(f)(1) prohibits lower courts from "enjoin[ing] or restrain[ing]" certain provisions of the INA. The Supreme Court has characterized this provision as "nothing more or less than a limit on injunctive relief." *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 481. But Plaintiffs do not seek injunctive relief; they ask the Court to stay the Somali Fast-Track Policy pursuant to § 705 of the APA. Section 1252(f)(1) "does not strip lower courts of authority to grant declaratory relief and to vacate agency action that is not in accordance with law." *Amica Ctr.*, 2026 WL 662494, at *33 n.7 (quoting *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 65 (D.D.C. 2025)); *see also, e.g.*, *Make the Rd. N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at *16 (D.C. Cir. Nov. 22, 2025) (statement of Millett & Childs, JJ.) ("By all textual indications,

---

individual claim that INS was obligated to immediately initiate deportation proceedings against plaintiff once she presented herself to INS); *Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007) (plaintiffs' false arrest claim "directly challenge[d]" immigration inspection officer's "decision to commence expedited removal proceedings"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (retaliatory exclusion claim was barred by § 1252(g) because Attorney General's decision to place plaintiff in exclusion proceedings "appears to provide the most direct, immediate, and recognizable cause of [plaintiff's] injury"). Plaintiffs likewise do not challenge the method by which removal proceedings are commenced, so cases arising in that context do not help Defendants either. *See Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) (court could not consider whether ICE "should have used a different statutory procedure to initiate the removal process" or ICE's decision "to lodge a detainer against [the plaintiff]"); *Saadulloev v. Garland*, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) (plaintiff challenged government's decision to arrest him, which "clearly is a decision to 'commence proceedings'").

14

then, Congress chose to confine Section 1252(f)(1)'s bar to injunctive relief, leaving the courts' power to enter stays unaffected."); *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 990 (9th Cir. 2025) ("[W]e hold that § 1252(f)(1) does not bar the district court's stay pursuant to § 705 of the APA pending further review of the merits of Plaintiffs' APA challenge."); *Las Ams. Immigrant Advoc. Ctr. v. DHS*, 783 F. Supp. 3d 200, 232 (D.D.C. 2025) (collecting cases and rejecting defendants' argument that § 1252(f)(1)'s limitation on injunctions applies to vacatur orders).

Defendants maintain that a § 705 stay is equivalent to a preliminary injunction because the standards governing their issuance are the same. Defs.' Opp. 17 (citing cases). That simplistic analysis finds no support in the case law. As the Fifth Circuit has explained in the context of § 706 vacatur, "[t]here are meaningful differences between an injunction, which is a 'drastic and extraordinary remedy,' and vacatur, which is 'a less drastic remedy.'" *Texas v. United States*, 40 F.4th 205, 219 (5th Cir. 2022) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)); *cf. Nken v. Holder*, 556 U.S. 418, 428 (2009) ("An injunction and a stay have typically been understood to serve different purposes."). The same logic applies in the context of a § 705 stay: "Unlike an injunction, a stay would not 'order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions' at issue." *Texas v. Biden*, 646 F. Supp. 3d 753, 769 (N.D. Tex. 2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022)); *see also, e.g.*, *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 73 (D.D.C. 2025) (rejecting similar argument from defendants that § 1252(f)(1) prohibited plaintiffs' requested stay under APA § 705).[7]

---

[7] Defendants raise two additional arguments, neither of which is persuasive. First, Defendants cite a series of cases describing stays as equivalent to injunctions, none of which speak to § 1252(f)(1) or its relationship to APA remedies. *See* Defs.' Opp. 20; *see also Coal. for Humane Immigrant Rts.*, 805 F. Supp. 3d at 72–73 (rejecting the same argument). Second, Defendants point to the

On top of that, Defendants' reliance on § 1252(f)(1) fails because that section "refers only to 'the operation of the provisions'—i.e., the statutory provisions themselves, and thus places no restriction on the district court's authority to enjoin *agency action* found to be unlawful." *Grace v. Barr*, 965 F.3d 883, 907 (D.C. Cir. 2020). Courts have therefore recognized that § 1252(f)(1) "bars district court review only in cases where a plaintiff seeks to enjoin the operation of the relevant portions of the INA, not when a plaintiff seeks to enforce those statutes." *Las Ams.*, 475 F. Supp. 3d at 1211. So too here. Plaintiffs are "alleging violations of the INA"; they are not "seeking to enjoin any aspect of the law but to force Defendants to comply with it." *Id.* at 1212; *see also, e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010) ("Section 1252(f) prohibits only injunction of 'the operation of' the detention statutes, not injunction of a violation of the statutes."); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (holding that § 1252(f)(1) did not bar relief because injunction "would not obstruct the 'operation of' Section 1226(a) but merely enjoin conduct that allegedly violates that provision"); *Florida*, 2022 WL 2431414, at *11 ("Florida is not asking the Court to 'enjoin or restrain the operation' of the immigration statutes governing mandatory detention and limiting parole, but rather Florida is seeking an order directing Defendants to enforce these statutes as they are written."); *Torres v. DHS*, 411 F. Supp. 3d 1036, 1050 (C.D. Cal. 2019) ("Plaintiffs only seek to enjoin conduct <u>not</u> authorized by the INA and that violates Defendants' own minimum detention standards."). All told, § 1252(f)(1) does not pose any bar to the relief Plaintiffs seek.

---

APA's legislative history, which similarly says nothing of the applicability of § 1252(f)(1) and does not foreclose the distinction between injunctive relief and a stay. *See* Defs.' Opp. 18–20; *see also Int'l Bhd. of Elec. Workers, Loc. Union No. 474, AFL-CIO v. NLRB*, 814 F.2d 697, 699–700 (D.C. Cir. 1987) ("Although legislative history may give meaning to ambiguous statutory provisions, courts have no authority to enforce alleged principles gleaned solely from legislative history that has no statutory reference point.").

## II.   Plaintiffs are likely to succeed on the merits of their APA claims.

Plaintiffs are likely to succeed on their APA claims for the reasons stated in their opening brief. *See* Pls.' Mem. 21–32. Defendants do not dispute that the Policy is contrary to law and arbitrary and capricious. They have, therefore, forfeited any such argument. *See, e.g.*, *Yazdanpanahderav v. U.S. Dep't of State*, No. 23-CV-3688, 2024 WL 3010874, at \*3 (D.D.C. June 14, 2024) ("The Court may treat an argument to which a party fails to respond as conceded."). Defendants' sole arguments on the merits are that the Somali Fast-Track Policy supposedly does not exist, and that it is not a final agency action. These arguments miss the mark.

First, Defendants' protests notwithstanding, Plaintiffs are likely to show that the Somali Fast-Track Policy exists. "Agency action generally need not be committed to writing to be final and judicially reviewable," *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 100 (D.C. Cir. 2020), and courts may "infer[] from a course of agency conduct that the agency has adopted a general policy, even in the face of agency denials of such policies existing," *Velesaca v. Decker*, 458 F. Supp. 3d 224, 237 n.7 (S.D.N.Y. 2020). Here, as in *R.I.L-R*, 80 F. Supp. 3d at 174, "[v]arious immigration experts and attorneys have averred that, based on their firsthand knowledge and collection of data," Defendants have been reassigning and fast-tracking the cases of non-detained Somali immigrants, whereas they have not observed the same with regard to immigrants of other nationalities. *See id.* at 174–75 (finding that plaintiffs' characterization of policy had "ample support in the record" based on declarations establishing agency actions with respect to one group but not another); *see also Escobar Molina*, 811 F. Supp. 3d at 47 (explaining that "the finding of final agency action" rested in part on "on-the-ground examples from over two dozen declarations describing roughly forty warrantless civil immigration arrests conducted without the requisite probable cause findings"). These on-the-ground examples, consistent across 18 declarations from practitioners in various jurisdictions and corroborated by Dr. Gunther's

17

analysis, show that "Plaintiffs' cases are not unique, but rather part of a larger pattern and practice." *M-J-M-A- v. Hermosillo*, No. 25-CV-02011, 2026 WL 562063, at \*18 (D. Or. Feb. 27, 2026); *see generally* Dkt. Nos. 3-2 to 3-19 (Attorney Declarations); Gunther Decl, Dkt. No. 10-1.

Second, Defendants' reliance on individual immigration judge discretion misunderstands Plaintiffs' position. Plaintiffs agree that immigration judges have broad discretion to conduct the immigration proceedings before them. *See* Pls.' Mem. 7. But the Somali Fast-Track Policy robs immigration judges of that discretion by putting non-detained Somali cases on an accelerated timeline writ large. *See* Pls.' Mem. 8–17. To the extent Defendants suggest that each instance of fast-tracking is merely an individual immigration judge's decision, "it defies logic and common sense to suggest that there is no overriding policy" of fast-tracking non-detained Somali cases when thousands of such cases were abruptly scheduled for short-notice hearings, "and it would be highly improbable (if not statistically impossible) for this to have resulted by happenstance from an 'amalgamation' of individual case-by-case decisions rather than a policy directive." *Florida*, 2022 WL 2431414, at \*10 (finding that plaintiffs alleged final agency action subject to judicial review).[8]

Finally, Defendants' bald assertions that Plaintiffs' challenged action is not "final" entirely ignores Plaintiffs' well-supported arguments and extensive evidence. *See* Pls.' Mem. 22–25. Plaintiffs' challenge is not to any particular removal order or subset of removal proceedings, *see supra* Section I.B, but rather to Defendants' discrete decision to reassign and fast-track non-detained Somali cases, *see Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1236 (D. Colo. 2025)

---

[8] Defendants also fail to address one of the key elements of the Policy—the reassignment of non-detained Somalis' cases to immigration judges who sit outside their jurisdiction and have higher-than-average asylum denial rates. That aspect of the Policy does not at all implicate the broad discretion of individual immigration judges.

18

(finding that "policy, pattern, or practice of ICE's failing to conduct individualized flight risk assessments during immigration enforcement operations" was "sufficiently 'discrete'"). Despite Defendants' attempts to elide them, the decision to fast-track proceedings and the decision to enter a removal order are distinct. *See Nava v. DHS*, 435 F. Supp. 3d 880, 903 (N.D. Ill. 2020) (finding that government "improperly merge[d] the decision to make an arrest with the decision to initiate removal proceedings" in arguing that the former could not be the consummation of the administrative decision-making process). Indeed, the fact that Defendants have already scheduled hearings pursuant to the Policy shows that they have "consummated [their] decision-making process." *Ramirez Ovando*, 810 F. Supp. 3d at 1236 (quoting *Nava*, 435 F. Supp. 3d at 903). And because the Policy "change[s] the way immigration judges run their dockets and their courtrooms," it has "practical consequence[s] for parties or their attorneys." *Las Ams.*, 475 F. Supp. 3d at 1216.

In sum, against the weight of 18 declarations from immigration attorneys across the country describing the same phenomenon, statistical evidence corroborating their experiences, and statements from immigration judges themselves in open court, Defendants can muster up no more than a conclusory assertion from counsel that the Somali Fast-Track Policy does not exist. Defendants do not meaningfully engage with any of the record evidence demonstrating the existence of the Policy—much less offer even a shred of evidence of their own. This Court should therefore have no trouble concluding that the Policy is a reviewable final agency action. And in the absence of any argument to the contrary, the Court should find that it likely violates the APA because it is both contrary to law and arbitrary and capricious. *See* Pls.' Mem. 21–32.

### III. Plaintiffs face irreparable harm absent emergency relief.

Defendants fail to rebut Plaintiffs' showing that they are irreparably harmed by the Policy. Instead, they ignore most harms to which Plaintiffs attest in their declarations. For example, Defendants focus entirely on the Hines Firm's economic harms, failing to acknowledge the harms

19

to the Hines Firm's mission, reputation, and attorney-client relationships, all of which courts have found to be irreparable. *See* Pls.' Mem. 32–34. In any event, with respect to existential threats to the business itself, the Hines Firm relies on far more than "bare allegations." Defs.' Opp. 24. Kelsey Hines provided specific evidence of turning down all new business, the mathematical impossibility of providing representation to her existing clients absent relief, and the incompatibility between her business model and the Policy. Hines Decl. ¶¶ 77–82, 89–92, 95. Together, these facts sufficiently "substantiate the claim that irreparable injury is 'likely' to occur." *Wis. Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985). Defendants similarly discount AHR's showing of irreparable harm. *See* Pls.' Mem. 35–36. They acknowledge that AHR "may suffer some harm" but assert that the organization's "view is myopic." Defs.' Opp. 26. In doing so, Defendants fail to appreciate that the significant and ongoing harms to AHR's programs and mission are "beyond remediation." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (citation omitted). AHR is operating in crisis mode, and because its model relies on partnering with private attorneys who are themselves overwhelmed, the Policy will continue to have impacts across AHR's range of programs. Sandison Decl. ¶¶ 31–35.

Moreover, Defendants' discussion of *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006), is beside the point. There, the plaintiffs were individual chaplains challenging a Navy retention practice that reduced plaintiffs' opportunities for promotion. *Id.* at 298. Even assuming one could fairly draw a comparison between the possibility of being denied promotion and the possibility of being denied asylum, Plaintiffs do not assert the latter injury to support this motion. Plaintiffs rely only on injuries that the Policy directly inflicts on their organizations—not injuries that individual immigration proceedings (not challenged here) may inflict on their clients. *See* Pls.' Mem. 32–36.

20

**IV.    The balance of the equities and the public interest favor Plaintiffs.**

The balance of equities and public interest favor a stay of the Policy. Defendants' claim that staying the Policy would interfere with the prompt execution of a removal order is misplaced. Defs.' Opp. 26. Non-detained Somalis subject to the Somali Fast-Track Policy are still in proceedings and are not subject to executable orders of removal. 8 U.S.C. § 1101(a)(47); *id.* § 1231(a)(1)(B)(i) ("The removal period begins . . . [t]he date the order of removal becomes administratively final."). Therefore, a stay in this matter would not interfere with the execution of any removal order. Nor does *Nken* stand for the proposition that the public interest favors "the prompt resolution of determining removability," as Defendants contend. Defs.' Opp. 26; *but see Nken*, 556 U.S. at 436 (discussing only stay of removal). Quite the opposite, *Nken* emphasizes that "[o]f course there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Id.*

Furthermore, Defendants continue to mischaracterize the nature of Plaintiffs' challenge. Far from collaterally attacking any removal proceeding, Plaintiffs challenge only Defendants' blanket policy of reassigning and fast-tracking non-detained Somali cases. A stay would restore individual immigration judges' discretion over their cases, consistent with the INA and longstanding practice prior to the adoption of the Policy, and allow individual noncitizens and their attorneys to pursue relief on case-specific timelines, thus allowing "individuals that may benefit from faster asylum decisions" to seek faster resolution. *Cf.* Defs.' Opp. 27; Decl. of Adam Boyd ¶ 12, Dkt. No. 3-9 (describing Policy's implementation resulting in *delay* of asylum hearing). Ultimately, a stay would "effectuat[e] statutes enacted by representatives of [the] people," *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cited in Defs.' Opp. 26), while the Policy's continuation undermines them. Because there is "generally no public interest in the perpetuation of unlawful agency action," *Open Cmtys. All. v. Carson*, 286 F. Supp.

21

3d 148, 179 (D.D.C. 2017) (citation omitted), the balance of the equities and the public interest tip decidedly in Plaintiffs' favor.

**V.    Defendants are not entitled to a stay pending appeal, and Rule 65(c)'s bond requirement does not apply in this case.**

Finally, this Court should reject Defendants' requests for a preemptive stay pending appeal and issue relief without requiring a bond. First, Defendants are not entitled to a stay pending appeal of any relief this Court grants. A stay pending appeal is an "extraordinary" remedy, *KalshiEX LLC v. CFTC*, 119 F.4th 58, 63 (D.C. Cir. 2024) (citation omitted), intruding "into the ordinary processes of administration and judicial review," *Nken*, 556 U.S. at 427 (citation omitted). The movant must show (1) a "strong" likelihood of success on the merits, (2) irreparable injury, (3) that a stay will not "substantially injure the other parties," and (4) that the public interest favors a stay. *Id.* at 426 (citation omitted). But any relief would be issued only after this Court found that the irreparable harm and balance of the equities factors favor *Plaintiffs*. Thus, for the same reasons that Plaintiffs are entitled to relief, Defendants cannot show they are entitled to an extraordinary remedy here.

Second, Defendants' contention that Plaintiffs should be required to give security in the form of a bond to offset "money that may not be recouped once distributed" by the government is without basis. Defs.' Opp. 27 (citing Fed. R. Civ. P. 65(c)). Defendants cite no authority for Rule 65(c)'s applicability where Plaintiffs seek not injunctive relief, but a stay under 5 U.S.C. § 705. Nor do they provide any explanation for or estimated amount of the government's distribution of irrecoverable funds. Regardless, this Court has "broad discretion . . . to determine the appropriate amount of an injunction bond," and where "it does not appear that Defendants would be substantially injured by issuance of" relief, the Court should waive any security requirement. *See*

22

*Council on Am.-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 81 (D.D.C. 2009) (quoting *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999)).

## CONCLUSION

The Court should grant Plaintiffs' motion and stay the Somali Fast-Track Policy pursuant to 5 U.S.C. § 705, in accordance with Plaintiffs' proposed order.

Date: April 3, 2026

Respectfully submitted,

*/s/ Jyoti Jasrasaria*
Jyoti Jasrasaria (D.C. Bar No. 1671527)
Michael J. Torcello (D.C. Bar No. 90014480)
Yenisey Rodríguez (D.C. Bar No. 1600574)
Robin F. Thurston (D.C. Bar No. 1531399)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
jjasrasaria@democracyforward.org
mtorcello@democracyforward.org
yenisey.rodriguez@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs*

23